597 A.2d 714

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth COBB, Appellant.**

Superior Court of Pennsylvania.

Argued April 2, 1991.

Filed Oct. 10, 1991.

Robert A. Berry, Harrisburg, for appellant.

Kathy G. Wingert, Deputy Dist. Atty., Harrisburg, for Com., appellee.

Before JOHNSON, HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a judgment of sentence entered in the Dauphin County Court of Common Pleas. For the reasons that follow, we vacate the judgment of sentence and remand for a new trial.

In this case, the Commonwealth sought to prove that appellant Kenneth Cobb had assaulted Ms. Bonnie M. Rogers. At trial, the alleged victim testified that appellant punched her in the face after she demanded one hundred dollars ($100.00) from him. Ms. Rogers explained that she had previously driven appellant to Philadelphia to obtain drugs in exchange for the aforementioned sum. According to Ms. Rogers, appellant broke her jaw in two places, causing profuse bleeding, severe pain and swelling and necessitating surgery.

On December 12, 1989, a jury found appellant guilty of simple assault. Subsequently, appellant's post-trial motions were denied and he was sentenced. This appeal followed.

■ While appellant raises seven issues for our review, we need only address appellant's claim concerning the lower court's restricting his cross-examination of a Commonwealth witness because our grant of a new trial based on this issue.[1] Specifically, appellant argues that the lower

---

1. In his brief, appellant raises the following contentions for our review:
   A. Whether the trial court erred in denying [appellant's] motion to dismiss based on [the] Commonwealth's violation of Rule 1100;
   B. whether the trial court erred in denying [appellant's] motion in limine to prohibit reference[s] to drugs and in making repeated references to drugs;
   C. whether the trial court erred in failing to allow full inquiry into the reasons for the victim's inconsistent and contradictory statements and [the] victim's having a capias issued against her;
   D. whether the verdict reached was against the weight of the evidence and contrary to the law;

court erred in refusing to allow him to question the alleged victim about a capias issued for her arrest. Appellant maintains that this evidence was admissible to show the witnesses' potential bias. We agree.

■ With regard to such inquiries, our Supreme Court has stated as follows:

whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.

The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise some doubt in the mind of the jury as to whether the prosecution witness is biased. It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.

*Commonwealth v. Evans*, 511 Pa. 214, 224–25, 512 A.2d 626, 631–32 (1986) (footnote omitted). In such an instance, however, the possibility of motive or bias must be more than mere speculation. *Commonwealth v. Mines*, 321 Pa.Super. 529, 533, 468 A.2d 1115, 1117 (1983). In sum, "[t]here must be a logical connection between the facts to be proven and the inference to be drawn from the facts."

E. whether the evidence was insufficient to sustain a verdict;
F. whether trial judges comments were so prejudicial as to constitute error warranting a new trial;
G. whether [appellant] was denied effective assistance of counsel.

*Commonwealth v. Gay,* 369 Pa.Super. 340, 343, 535 A.2d 189, 190 (1988) (citation omitted).

While cross-examining Ms. Rogers, appellant attempted to prove that a warrant had been issued for the witnesses' arrest in a separate matter. In sum, appellant hoped to show possible bias on the part of Ms. Rogers: under this theory, appellant sought to demonstrate that Ms. Rogers testified in a manner helpful to the prosecution with the hope that she might later receive favorable treatment from the Commonwealth. Accordingly, in light of *Evans, supra,* and its progeny, we are required to conclude that this evidence was relevant and that the lower court erred in refusing to permit its introduction.

Reversed and remanded for a new trial. Jurisdiction is not retained.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

I agree that trial defense counsel was entitled to cross-examine Bonnie M. Rogers, the victim/witness, as to her inconsistent and contradictory statements. I also agree that Rogers could be cross-examined as to whether she was subject to prosecution for the purpose of establishing possible bias due to any outstanding charges. However, I believe that adequate cross-examination occurred on the particular facts of this case and that the error, if any, in limiting cross-examination was harmless. Therefore, I respectfully dissent.

Kenneth Cobb argues, within subsection C of the Argument portion of his Brief, that cross examination of a prosecution witness relevant to charges pending in an attempt to show bias on the part of the witness is permissible under Pennsylvania law. This is clearly correct. *Commonwealth v. Hill,* 523 Pa. 270, 566 A.2d 252 (1989); *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986). Although Cobb makes reference to "pending charges" against the witness, Rogers, my review of the entire certified

record does not confirm what charges, if any, were, in fact, pending against the witness. Apart from the incomplete question put to the witness during cross-examination, which is set forth below, and some undocumented statements by defense counsel during a discussion after the jury had been excused at the end of the first trial day, *see* Transcript of Proceedings, December 11, 1989, pages 124–126, the only reference in the record to any alleged charges appears in Cobb's Motion in Arrest of Judgment and for New Trial filed January 19, 1990, wherein Cobb sets forth as one of his assigned reasons:

6. Court erred in failing to allow Defendant to inquire about the victim's capias, which was withdrawn contemporaneous to trial in this matter, for the purpose of establishing bias.

A critical issue at trial was the credibility of Bonnie Rogers, the victim of the assault and battery. Rogers testified that she had lied in her initial report of the assault against her. When she had detailed the incident both to her mother and to the police, Rogers had not initially implicated Cobb as her assailant, but rather gave a story about an intruder in her apartment. Subsequently, Rogers told another version that implicated Cobb in the assault.

Other Commonwealth witnesses also testified that Rogers had initially told one story which was inconsistent with her testimony at trial. There was no attempt to hide from the jury the clear inconsistencies in Rogers' stories. With this as backdrop, the following occurred during the cross-examination of Rogers by Nancy E. Goldberg, trial defense counsel:

BY MS. GOLDBERG:

Q. Miss Rogers, is it now true you gave the Harrisburg Police two different stories?

A. Can't I answer yes and tell why?

Q. You lied, didn't you?

A. Yes, I lied. I told you I was scared.

Q. You lied to a police officer, correct?

A. Yeah. He isn't God.

Q. You lied—

MR. RUSSO [Deputy D.A.]: Objection.

THE COURT: We know she told the police two different stories, and we know she originally told her mother some unidentified man assaulted her.

Now, let's go on to the next area.

BY MS. GOLDBERG:

Q. Isn't it true that at the time of the incident you had no medical insurance?

A. No, I didn't.

Q. And you're living in North Carolina now [?].

A. Yes, I'm living in North Carolina now.

Q. Isn't it true there is a warrant issued for you—

MR. RUSSO: Objection, Your Honor.

THE COURT: First of all, I don't see the relevance; and, second of all, I think that is out of line, completely out of line.

MS. GOLDBERG: Your Honor, the relevance would go to her credibility; that she wants favorable treatment from the Commonwealth—

THE COURT: How would that help?

MS. GOLDBERG: That she's assisting in this case, either pursuant to a plea bargain or—

THE COURT: Well, you can ask her if she has any—

MR. RUSSO: May we approach?

THE COURT: No, no, no.

I'll sustain the objection.

THE WITNESS: I say it's none of her—

THE COURT: Hold it, now. We're getting out of line, here.

I don't want to know about any other case.

MS. GOLDBERG: Your Honor, for the record, note my objection that I'm not allowed to pursue this line of questioning.

THE COURT: Yes.

Look, we have an aggravated assault. We're getting into all kinds of things.

All right, let's go.

BY MS. GOLDBERG:

Q. Are you testifying here today pursuant to some sort of deal with the Commonwealth?

A. No.

Q. You're testifying here today in expectation of obtaining some favorable treatment from the Commonwealth—

MR. RUSSO: Objection, Your Honor.

A. No. I'm testifying because Kenny did something wrong.

Gee, if he hit you, you would want him to get time, wouldn't you? My goodness.

THE COURT: All right. That's it.

THE WITNESS: My God.

BY MS. GOLDBERG:

Q. Isn't it true after Kenny was arrested you told Tony Cobb, Kenny's brother, you would drop these charges against Kenny if he'd pay you $600 or get you some cocaine?

A. You know my doctor bill is $9,000? Are you kidding? Would you do that?

Q. Is that true or not?

A. No.

MS. GOLDBERG: Thank you.

I have nothing further.

THE COURT: All right. Redirect.

Transcript of Proceedings, December 11–12, 1989, pages 92–95.

While defense counsel was prevented from asking one question, concerning whether a warrant had been issued for Bonnie Rogers' arrest, she was indeed permitted to pursue the line of questioning, by inquiring as to whether any deal had been offered to Rogers by the Commonwealth. Defense counsel was also permitted to ask, albeit over the objection of the Deputy District Attorney, whether Rogers

was testifying in expectation of obtaining some favorable treatment from the Commonwealth.

Defense counsel further inquired of the witness whether she had offered to drop the criminal charges against Cobb in exchange for $600 or cocaine. Counsel received responses from the witness to all of these questions, all in the presence of the jury. Defense counsel had indicated that her reason for inquiring about the outstanding warrant was to test Rogers' credibility and to suggest that the witness wanted favorable treatment. Transcript of Proceedings, December 11–12, 1989, page 93. It was after this offer of proof that counsel was indeed permitted to cross-examine concerning any deals with the Commonwealth or any expectation by Rogers of favorable treatment. *Id.*, at page 94.

Nowhere in the record can we determine exactly what conduct by Rogers, if any, may have prompted the issuance of the alleged capias. Trial defense counsel does assert to the trial court, after the conclusion of Rogers' testimony and at the end of the first day of trial, that there was "the outstanding warrant and that she [Rogers] skipped the state after making bail." Transcript of Proceedings, December 11–12, 1989, page 124. Attorney Goldberg goes on, however, to apparently inform the court that Rogers was exempt from arrest while in Pennsylvania to testify in the Cobb prosecution. Ms. Goldberg stated to the court:

MS. GOLDBERG: .....

I believe the Commonwealth is going to rely on Section 5965 of the Judicial Code which would exempt her [Rogers] from arrest at this point; however, the fact is she has already been arrested, and she made bail and she left the Commonwealth, and I would like Your Honor to enforce the outstanding capias and have Miss Rogers taken into custody at this time.

Transcript of Proceedings, December 11, 1989, page 125. In response, the Honorable William W. Lipsitt said, in pertinent part:

THE COURT: Anyway, I'm not going to be concerned. If the District Attorney's Office feels she should be arrested, that's up to the District Attorney's Office.

Just because she's a witness against your client does not seem to me to give you the authority to demand she be put in jail.

*Id.* The court did not accede to defense counsel's demand that the witness be taken into custody.

The issue before us on this appeal is whether the inability of the defense to ask one specific question concerning the issuance of a capias warrants a new trial, where the record reveals that numerous other questions were asked and answered to place the special interest or credibility of the client before the jury. The cross-examination and recross-examination of this witness, Rogers, spans seventeen pages in the record, Transcript of Proceedings, December 11–12, 1989, pages 84–95, 97–101, and delves into the witness' medical insurance, her possible deals with the Commonwealth, her expectation of favorable treatment, her false statements to police officers, the implausibility of her second version of what transpired, and her willingness to drop the charges for either cash or cocaine. Two other Commonwealth witnesses testified to the fact that Rogers, the victim, had changed her story. Was the trial court's sustaining of the single objection to the question concerning whether a capias had been issued of sufficient gravity to compel a new trial, where other relevant questions along the same line were subsequently asked and answered. I would conclude it was not.

I find this case to be similar to *Commonwealth v. Sneed,* 514 Pa. 597, 526 A.2d 749 (1987), where our Supreme Court refused to find reversible error upon the trial court having sustained an objection to a question on cross-examination as to whether the witness was "really hoping that your bail gets lowered." In that case, Mr. Justice McDermott, speaking for a unanimous Court, found that the fact relative to the witness' bail was one with which the jury was familiar through other testimony. Again, in *Commonwealth v.*

*Carr,* 459 Pa. 262, 328 A.2d 512 (1974), our Supreme Court approved the curtailment of cross-examination aimed at showing bias where the possible bias was otherwise made clear to the jury, thereby rendering any error harmless beyond a reasonable doubt.

As in *Sneed* and in *Carr,* I find the record before us establishes that the witness/victim, Bonnie M. Rogers, was exposed to extensive cross-examination and that her inconsistencies and possible bias were, in fact, before the jury. Based upon the entire record, I would find the error, if any, by Judge Lipsitt in sustaining the objection to the single question concerning the unparticularized capias to have been harmless.

Since I also would find the other six issues raised by Cobb to be without merit, I would affirm the judgment of sentence. Accordingly, I respectfully dissent.