665 A.2d 1275

**COMMONWEALTH of Pennsylvania**

v.

**Anthony MULLINS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 8, 1995.

Filed Oct. 5, 1995.

Olszewski, J., filed concurring opinion.

Cirillo, J., filed dissenting opinion.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Kathy L. Echternach, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge.

This is an appeal from a judgment of sentence entered after the lower court, sitting without a jury, found appellant Anthony Mullins guilty of aggravated assault. After thoroughly considering the issues presented, we vacate the judgment of sentence and remand for a new trial.

The lower court set forth the relevant facts:

On May 3, 1994 at approximately four-forty five p.m. (4:45) Philadelphia Police Officer John McGuire responded to a radio call to investigate an alleged criminal matter at 24th and Norris Streets, in Philadelphia, Pennsylvania. When McGuire arrived on the scene he was met by Ser-

586

geant Lafayette Caison and Buster Demps, the complainant. The complainant told the officers that he had been robbed at 24th and Norris Streets. Specifically, Demps stated that prior to going to 24th and Norris Streets he had gone to the 23 Center at 23rd Street and Lehigh Avenue to get his foodstamps and his disabled veteran's check. While at the 23 Center, the complainant was approached by [appellant Anthony Mullins].... Mullins asked Demps for some money and Demps responded he did not have any money.

After leaving the 23 Center, Demps, accompanied by a lady friend decided to go to the [C]hinese restaurant located at 24th and Norris Streets, when he came in contact with the [appellant] again. The [appellant] approached Demps and said, "Give me some money." Demps responded to [appellant] he did not have any money.

Again, Mullins asked the complainant for money. Demps, again responded no and then he noticed Mullins picked up a pepsi-cola bottle. As the complainant turned to walk away, the [appellant] swung and hit Demps over the head, and the bottle broke. While Demps stood there bleeding he asked Mullins, "why did you hit me?". Whereby, the [appellant] responded, "you are not going to let me have no money?" Demps replied, "I told you I didn't have any money to give you."

Subsequently, Mullins picked up a broom stick laying down by the curb, and said, "you are not going to give me nothing?" After Mullins picked up the broom stick Demps pulled a pocket knife with a blade about three and a half (3½ ) inches long out of his pocket. The [appellant] swung the stick and it broke as he hit Demps across his left shoulder. The complainant then swung the knife as the defendant turned and cut him across the back with the knife. After being cut the [appellant] ran up on some steps located at 24th and Norris Street. The complainant had seen the [appellant] going in and out of this residence for approximately two years.

Demps ran to 22nd and Crosky Street and called 911.... [P]olice were dispatched to the area. Demps did not notice until after he called the police that his $100.00 was missing.

An investigation ensued based on the complainant's allegation of being robbed. Caison and McGuire went to a house located at 1948 N. 24th Street. Upon arriving the officers observed on the railing of the house, a gray hooded sweatshirt, marked with "Raiders" on the front, with cuts on the back and left sleeve. The sweatshirt had a blood stain on the left sleeve. Additionally, McGuire observed a white tee shirt, marked with "Real Men Recycle," ... which was also cut and had blood stains on it.

Trial court opinion dated 1/30/94 at 1–4 (citations to the record omitted).

Appellant was arrested and charged with Robbery,[1] Aggravated Assault,[2] and Possession of an Instrument of Crime (PIC).[3] The trial court, sitting without a jury, found appellant guilty of aggravated assault, not guilty of robbery, and acquitted him of PIC. Appellant filed an unsuccessful post-verdict motion arguing that the trial court had erred by improperly restricting cross-examination of the alleged victim regarding suspected drug use and an outstanding drug charge. In this timely appeal, appellant again challenges the circumscribed cross-examination. According to appellant, cross-examination as to the victim's possible expectation of leniency with respect to an outstanding drug charge was relevant to establish the victim's potential bias and possible motive for testifying favorably to the Commonwealth. Further, appellant claims that the preclusion of such examination violated his state and federal right to confront adverse witnesses. We agree.

 Preliminarily, we recognize that the scope and limits of cross-examination are within the discretion of the trial court and its rulings will not be reversed absent a clear abuse of that discretion or an error of law. *Commonwealth v. Buksa,*

1. 18 Pa.C.S.A. § 3701.

2. *Id.* § 2702.

3. *Id.* § 907(a).

440 Pa.Super. 305, 311, 655 A.2d 576, 579 (1995); *Commonwealth v. Gentile*, 433 Pa.Super. 381, 387, 640 A.2d 1309, 1313 (1994). Nevertheless, a witness may be cross-examined as to any matter tending to show interest or bias. *Commonwealth v. Davis*, 438 Pa.Super. 425, 430, 652 A.2d 885, 887 (1995).

[When] a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.

The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise some doubt in the mind of the jury as to whether the prosecution witness is biased. It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.

*Commonwealth v. Smith*, 436 Pa.Super. 277, 289, 647 A.2d 907, 912–13 (1994) (quoting *Commonwealth v. Evans*, 511 Pa. 214, 224–26, 512 A.2d 626, 631–32 (1986)).[4] Moreover, "[t]he

---

**4.** The foregoing pronouncement represents a thoughtful refinement of the exception permitting cross-examination regarding bias. In *Commonwealth v. Coades*, 454 Pa. 448, 311 A.2d 896 (1973), our Supreme Court held that a defendant was improperly precluded from cross-examining a co-indictee about that indictment. This questioning would have enabled the jury to evaluate whether the co-indictee was testifying for the Commonwealth to gain favorable treatment in his own case. *Id.* at 452, 311 A.2d at 898. The Court did not expressly restrict bias cross-examination to indictments for the same crime. A panel of this court thereafter extended the scope of the bias exception, requiring only "the existence of an indictment against the witness; and evidence that the prosecutor was able to promise the witness lenience on the charges against him." *Commonwealth v. Joines*, 264 Pa.Super. 281, 284, 399

right is not to be denied or abridged because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other party." *Id.*, 647 A.2d at 912–13 (relying on *Lenahan v. Pittston Coal Min. Co.*, 221 Pa. 626, 70 A. 884 (1908)).

■ The opportunity to impeach a witness is particularly important when the determination of a defendant's guilt or innocence depends on the credibility of the questioned witness. *See Commonwealth v. Birch*, 532 Pa. 563, 566, 616 A.2d 977, 978 (1992) (when prosecution and defense witnesses presented conflicting versions of the facts and the credibility of the prosecution's chief witness was therefore pivotal, the trial court committed reversible error by restricting cross-examination as to that witness' potential bias). Furthermore, a witness' status as accuser does not obviate the need for full cross-examination. To the contrary, "the victim, as accuser, must be subject to the utmost scrutiny if his accusations are to fairly form the basis of the criminal prosecution at hand." *Commonwealth v. Borders*, 522 Pa. 161, 165, 560 A.2d 758, 760 (1989). *See also Commonwealth v. Simmon*, 521 Pa. 218, 224, 555 A.2d 860, 863 (1989) (holding that "a prosecution witness's juvenile probationary status is relevant to show bias regardless of whether the person appears as the victim/complainant").

During cross examination, appellant attempted to question the complainant as to his potential bias and possible motive to testify unfavorably to appellant. Specifically, appellant sought to demonstrate that the complainant had testified in a manner helpful to the Commonwealth to curry favorable treatment on his outstanding drug charges. The challenged testimony suggested that Mr. Demps had been in the area of the altercation

A.2d 776, 778 (1979), *appeal dismissed*, 498 Pa. 127, 445 A.2d 100 (1982). In *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986), the Supreme Court explicitly approved this court's application of the law: "[The] Superior Court's interpretation of *Coades*, [as set forth in *Joines* ] thus broadened the applicability of bias cross-examination to include not only indictments for the *same* crime, but indictments for any crime within the same jurisdiction. We believe that the rule of *Joines* is correct...." *Id.* at 224, 512 A.2d at 631 (emphasis in original) (footnote omitted).

590

to purchase drugs and that the police possessed an outstanding warrant for his arrest:

Q: MR. DEMPS, IN FACT YOU WERE NOT IN THE AREA TO BUY CHINESE FOOD, BUT YOU WERE IN THE AREA TO BUY SOME DRUGS, RIGHT?

MR. PHILLIPS: OBJECTION.

THE WITNESS: NO.

THE COURT: OVERRULED. HE COULD ANSWER.

Q: YOU USE DRUGS, DON'T YOU?

MR. PHILLIPS: OBJECTION.

THE COURT: SUSTAINED.

THE WITNESS: IF I DO—

THE COURT: —WAIT A MINUTE SIR.

MR. PHILLIPS: OBJECTION.

THE COURT: WHEN YOU HEAR AN OBJECTION WAIT UNTIL I RULE. I WILL LET YOU KNOW WHETHER YOU COULD ANSWER, OKAY.

Q: HAVE YOU EVER USED DRUGS?

MR. PHILLIPS: OBJECTION.

THE COURT: SUSTAINED.

Q: MR. DEMPS, YOU IN FACT HAVE AN OPEN BENCH WARRANT FOR DRUGS?

MR. PHILLIPS: OBJECTION. THAT IS UNCONSCIONABLE. YOUR HONOR I ASK FOR A SIDEBAR?

THE COURT: YOU DON'T NEED A SIDEBAR. I WILL ADMONISH THIS LADY. JUST HAVE A SEAT. YOU ARE TURNING RED. YOU ARE GETTING EXCITED.

MR. PHILLIPS: YES I AM SORRY.

THE COURT: MISS CLAYTON I AM GOING TO ASK YOU NOT TO PURSUE THIS LINE OF QUESTIONING. YOU KNOW IT IS TOTALLY IRRELEVANT

TO THESE PROCEEDINGS. YOU KNOW THAT WHAT YOU ARE DOING IS NOT CORRECT.

N.T. 5/16/94 at 42–44.

▆ In *Commonwealth v. Cobb*, 409 Pa.Super. 168, 597 A.2d 714 (1991), *appeal denied*, 530 Pa. 664, 610 A.2d 44 (1991), this court considered an analogous scenario. The *complainant* in *Cobb*, had driven appellant to Philadelphia for drugs in exchange for a one hundred dollar fee. When the complainant demanded payment, appellant punched her in the face. At trial, appellant unsuccessfully attempted to cross-examine the alleged victim about an arrest warrant issued in a separate matter to demonstrate that she had testified in a manner helpful to the prosecution in anticipation of favorable treatment from the Commonwealth on that matter. *Cobb*, 409 Pa.Super. at 171, 597 A.2d at 714–15. Appealing his subsequent simple assault conviction, appellant maintained that the trial court's disallowance of this questioning improperly denied him an opportunity to establish the witness' potential bias. A panel of this court agreed and remanded the case for a new trial. Similarly, we conclude that the lower court in this case erred by precluding cross-examination of the complainant regarding favorable treatment anticipated or received from the Commonwealth in exchange for his testimony.

▆▆ We must now assess whether the lower court's error necessitates the award of a new trial. Not every denial of an accused's right to cross-examine with respect to an unrelated case requires a new trial. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). If the error did not control the outcome of the case, it will be deemed harmless. *Commonwealth v. Blassingale*, 391 Pa.Super. 395, 401, 571 A.2d 426, 429 (1990), *appeal denied*, 526 Pa. 627, 584 A.2d 311 (1990) (restricted cross-examination of Commonwealth witness regarding charges which had been brought against him but withdrawn prior to his testimony at appellant's trial did not affect the outcome of the case and was deemed harmless error; those charges had been dropped not because of the Commonwealth's influence,

but because the victims had failed to appear). In making this assessment, we must consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436. When there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless. *In the Interest of Dixon*, 440 Pa.Super. 23, 29, 654 A.2d 1179, 1182 (1995) (citing *Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978)).

■ After careful review, we conclude that the lower court's error may have contributed to appellant's conviction. The victim's testimony in this case was neither cumulative nor corroborated. *Compare Commonwealth v. Gentile*, 433 Pa.Super. at 389–90, 640 A.2d at 1314 (any error in disallowing cross-examination regarding the witness' pending criminal charge and possible bias was deemed harmless when that witness' testimony was confirmed by other witnesses at trial) *and Commonwealth v. Culmer*, 413 Pa.Super. 203, 213–14, 604 A.2d 1090, 1094–95 (1992) (error in restricting cross-examination of victim on pending criminal charges ruled harmless when the victim's testimony was corroborated in detail by another eye witness and the inference of bias was extremely tenuous) *with Commonwealth v. Smith*, 436 Pa.Super. at 292–93, 647 A.2d at 914 (inability of defense to conduct full and fair cross-examination of sole eyewitness regarding his prior record and outstanding criminal charges could not be deemed harmless because that witness' testimony was pivotal to the prosecution's case and his credibility was therefore a key issue at trial). To the contrary, the Commonwealth's case was based almost exclusively on the statements of the complainant, the lone testifying witness to the incident.[5] As such, the

5. The remainder of the prosecution's case was presented by investigating officers who had derived their testimony from the complainant. The officers found a shirt of appellant's that had cuts in the back

determination of guilt hinged on the lower court's premature yet favorable assessment of that witness' credibility. When appellant attempted to challenge the complainant's credibility by showing bias stemming from the outstanding drug charge, the lower court improperly stopped him, finding the question to be "totally irrelevant." N.T. 5/16/94 at 44. *See Commonwealth v. Borders*, 522 Pa. at 164–65, 560 A.2d at 759–760 (restricted cross-examination of the *complainant* regarding criminal charges that had been lodged against him only after he had identified appellant as his assailant constituted reversible error even though the desire for leniency could not have motivated the complainant to implicate appellant: "[t]he presence of the charges ostensibly brought the witness into the influence of the prosecution ... and that happenstance was a relevant area of exploration by Appellant, regardless of its perceived weakness by the Commonwealth"). Based on the foregoing, we are constrained to conclude that the trial court's error in precluding appellant from challenging the self-interest of the Commonwealth's pivotal witness renders its credibility determination problematic and necessitates the award of a new trial.

Judgment of sentence is vacated and the case is remanded for a new trial. Jurisdiction is relinquished.

CIRILLO, J., files a dissenting opinion.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

We join in the opinion of the majority. We recognize a certain appeal in the premise of the dissent's argument—that the victim in a criminal prosecution should be treated differently under cross-examination than other witnesses—but must write separately to explain why we are ultimately unable to lend our support to that position.

consistent with the suggestion that complainant was the aggressor. *See* N.T. 5/16/94 at 45–46, 89–90. Consequently, outstanding criminal charges were relevant to show the victim's bias and potential motive to lie about appellant's status as aggressor.

594

In *Commonwealth v. Ross,* our Supreme Court repeated the long-established rule that evidence of a witness's conviction on a felony or *crimen falsi* misdemeanor charge may be used during cross-examination to impeach her credibility. 434 Pa. 167, 169, 252 A.2d 661, 662 (1969). The relevance of such evidence does not depend upon its ability to show a motive for testifying: rather, the evidence is relevant because its existence places the veracity of the witness's entire testimony into doubt. With regard to the particular question of bias as a motive for testifying, the *Ross* Court went on to note that an exception exists which would relax the general rule and allow a witness to be cross-examined for bias on a mere indictment, provided that the indictment was for the same crime or one so closely related as to be part of the same occurrence. 434 Pa. at 169–170, 252 A.2d at 662–663. How to properly interpret this bias exception is the question which has split this panel.

Our high court revisited this issue in *Commonwealth v. Coades,* where it held that the defendant should have been permitted to cross-examine a co-indictee about that indictment. 454 Pa. 448, 311 A.2d 896 (1973). While the *Coades* Court simply applied, and did not extend, the exception noted in *Ross,* it did not limit its reasoning to cases where the same crime was involved, either. Instead, the Court stated generally that "[t]he rationale for permitting this type of cross-examination is that the jury should be allowed to evaluate whether the witness testified for the prosecution to gain favorable treatment in his own case." 454 Pa. at 454, 311 A.2d at 898 (citing J. Wigmore, Evidence § 967).

In *Commonwealth v. Warren,* a rape defendant sought to convince an *en banc* panel of this Court that he was wrongfully denied the opportunity to cross-examine his victim about her arrest on the day before trial. 250 Pa.Super. 522, 378 A.2d 1271 (1977). In rejecting this claim, the *Warren* panel noted that the *Ross* exception "seems to stand on two legs: necessity of an *indictment;* and necessity of *same crime.* The first leg is to ensure that there is some substance to the charge as to which leniency has allegedly been promised.... The second leg of the [exception] is to ensure that the

prosecutor was able to promise leniency." 250 Pa.Super. at 529, 378 A.2d at 1274.

Even the most cursory review of these statements will reveal the flaw in the *Warren* panel's logic. In order for a prosecutor to be able to promise leniency to an indicted witness, it is obviously unnecessary that the witness's indictment be for the same crime. In fact, the *Warren* panel itself noted that it may not even be necessary for the crimes to have been committed against the same sovereign, as a prosecutor might be able to "get cooperation" from a fellow prosecutor in an entirely different jurisdiction. *Id.* Therefore, when we considered the *Ross* exception again in *Commonwealth v. Joines,* we recharacterized its two requirements as "the existence of an indictment against the witness; and evidence that the prosecutor was able to promise the witness leniency on the charges against him." 264 Pa.Super. 281, 284, 399 A.2d 776, 778 (1979), *appeal dismissed,* 498 Pa. 127, 445 A.2d 100 (1982). It is this recharacterization which the dissent would apparently reject.

While the dissent correctly notes that we extended the scope of the bias exception in *Joines,* it goes on to assert that the opinion of our Supreme Court in *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986), is flawed because it "relies on" that extension. While this argument seems to suggest that the *Evans* Court blindly followed our mistake, somehow oblivious to the fact that we had altered the law, a review of the *Evans* opinion reveals that our high court knew exactly what we had done and, furthermore, that the Court knew precisely the direction it was taking:

> [The *Joines* panel's] interpretation of *Coades,* thus, broadened the applicability of bias cross-examination to include not only indictments for the same crime, but indictment for any crime within the same jurisdiction.
>
> We believe that the rule of *Joines* is correct, as far as it goes, and that *Joines* taken together with [*Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978) ] require that whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or

because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury.

511 Pa. at 223, 512 A.2d at 631. Given the comprehensiveness of the *Evans* Court's review of Pennsylvania case law, the agreement between the Court's reasoning and that of distinguished treatises on the common law of evidence, and the consonance of the Court's conclusions to those of the United States Supreme Court in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (regarding a similar question under the Sixth Amendment), we find that it cannot plausibly be argued that the Court's endorsement of the axiom that bias is always relevant represents a thoughtless aberration.

As for the dissent's suggestion that this evidentiary rule should be applied differently when the victim, rather than any other witness, is on the stand, we note that our Supreme Court has definitively laid this notion to rest as well. In a case directly on point on this issue, the Court held that although the witness at issue was also the purported victim, "it is the policy of this court to allow full cross-examination so long as it is relevant to the search for the truth of the matter under trial. This is especially true where the witness sought to be discredited is a major witness against the defendant and whose covert reasons for testifying in the matter must be allowed to be exposed." *Commonwealth v. Hill*, 523 Pa. 270, 274, 566 A.2d 252, 253 (1989); *see also, Commonwealth v. Simmon*, 521 Pa. 218, 224, 555 A.2d 860, 863 (1989) (holding that "a prosecution witness's juvenile probationary status is relevant to show bias regardless of whether the person appears as the victim/complainant"); *Commonwealth v. Borders*, 522 Pa. 161, 165, 560 A.2d 758, 760 (1989) (noting that "the victim, as accuser, must be subject to the utmost scrutiny if his accusations are to fairly form the basis of the criminal prosecution at hand").

Our review of the record in the case at bar supports a conclusion that the complainant's testimony was essentially the only evidence linking the defendant to the crime. The complainant could have had any number of reasons for blam-

ing the defendant, and both of the Constitutions we uphold mandate that the question of whether the complainant actually was this defendant's victim was a matter to be decided on the evidence, not *a priori*. In any case, it is undeniably beyond the power of any panel of this Court to disregard the well-reasoned precedent of our Supreme Court. For these reasons, we cannot concur in the arguments of the dissent.

CIRILLO, Judge, dissenting:

I respectfully dissent. While I believe that a witness may be cross-examined as to matters tending to show interest or bias, in cases where the witness subject to cross-examination is also the victim, that victim should be treated differently from the ordinary witness. I, therefore, disagree with the majority's conclusion that the trial court erred in precluding appellant from challenging the self-interest of the victim.

The liberalization of cross-examining witnesses creates a chilling effect on any victim of crime coming forth to testify. Mr. Demps was the victim in this case, and yet the defense was permitted to question him on unrelated matters to present the jury with a theory that he "might" try to obtain leniency in another case. While witnesses may come forth with the idea of gaining from their testimony, victims already have a vested interest in testifying, namely obtaining justice against their attackers. Victims do not look to be attacked in an effort to gain favor with prosecutors in their own cases. This decision reinforces the notion that victims should hesitate about coming forth.

This court, in determining that a defendant has the right to cross-examine a witness about pending charges, continues the progeny of case law established in *Commonwealth v. Cobb*, 409 Pa.Super. 168, 597 A.2d 714 (1991). I believe that while *Cobb* is factually analogous to the instant case, the rule of law it sets forth is incorrect. A proper examination of the law necessitates close examination of the court's rationale.

In *Cobb*, Kenneth Cobb was charged with assault of Bonnie Rogers. Cobb had agreed to pay Rogers one hundred dollars

if she drove him to Philadelphia to purchase drugs. When Rogers demanded her money, Cobb stuck her. This court determined that the trial court had erred in refusing to allow the defendant to question the victim/witness about outstanding charges against her. The court in *Cobb* relied on the Pennsylvania Supreme Court decision in *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986), which held:

> [W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him **within the same jurisdiction,** that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on any other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution.

*Id.* at 224–25, 512 A.2d at 631–32 (emphasis added).

In *Evans,* the defendant wanted to cross-examine a co-defendant turning state's evidence to determine whether the co-defendant was testifying to gain leniency in charges still pending against him. The court in *Evans* acknowledged the general rule barring admission of a witness's unconvicted bad acts to determine whether a witness might be biased in his current testimony because of the possibility of lenient treatment on the other crimes. "No Pennsylvania case has allowed cross-examination concerning a witness's 'unconvicted bad acts' to establish that a witness might hope for leniency." *Id.* at 221, 512 A.2d at 630. The Pennsylvania Supreme Court proceeded to base its decision in *Evans* on what I perceive to be an incorrect departure by the Superior Court in its decision in *Commonwealth v. Joines*, 264 Pa.Super. 281, 399 A.2d 776 (1979).

In *Joines,* Joines wanted to cross-examine Furlong, a prosecution witness, about Furlong's guilty plea to a charge of insurance fraud. Joines hoped to show that Furlong was allowed to withdraw his guilty plea and enter an ARD program in exchange for his testimony. The trial court refused

to allow cross-examination on that topic, with the understanding that, according to *Commonwealth v. Ross,* 434 Pa. 167, 252 A.2d 661 (1969) and *Commonwealth v. Coades,* 454 Pa. 448, 311 A.2d 896 (1973), only a witness under indictment for the same crime involved in the case in which he is testifying is permitted to be cross-examined about that incident. This court, in determining that the trial court had erred, deviated from the exceptions set forth in *Ross* and *Coades,* and determined that such exceptions were premised on only two requirements: "the existence of an indictment against the witness; and evidence that the prosecutor was able to promise the witness leniency on the charges against him." *Joines,* 264 Pa.Super. at 284, 399 A.2d at 778. A closer look at *Commonwealth v. Warren,* 250 Pa.Super. 522, 378 A.2d 1271 (1977), where the Pennsylvania Supreme Court explains its rationale for the exceptions set forth in *Ross* and *Coades,* illustrates the rather abrupt departure of the *Joines* court.

> The rule seems to stand on two legs: necessity of an indictment; and necessity of same crime. The first leg is to ensure that there is some substance to the charge as to which leniency has allegedly been promised ... **The second leg of the rule is to ensure that the prosecutor was able to promise leniency.**

*Warren,* 250 Pa.Super. at 529, 378 A.2d at 1274 (emphasis added).

The court in *Joines* recharacterized *Warren*'s requirements; specifically, the court in *Joines* did not necessitate the witness be charged with the same crime. In my view, *Joines* erroneously extended the rule to allow the cross-examination of a prosecution witness who had been indicted on an unrelated charge. In *Evans,* the Supreme Court followed the *Joines* opinion, accepting the broadened applicability of bias cross-examination, namely, that a defendant could cross-examine any prosecution witness on any outstanding charge. Because I am of the opinion that this extension was improper, I feel that *Cobb,* too, (based on *Evans* ) reached an incorrect result. The progeny of the aforesaid cases carrying out this broadened application of cross-examination bias, in my view, cannot

be justified; this includes the case at hand. It should also be noted that neither the majority nor the concurrence has made an examination of whether or not the outstanding charge here is within the same jurisdiction, or if the prosecution has the power to promise leniency.

Should the law set forth in these cases continue to be followed by our courts, it will establish a society where a victim is discouraged from asserting a complaint; while a defendant's past is protected, the victim will be forced to endure the disclosure of his own previous indiscretions, thereby increasing the chance that the victim will be denied justice. Additionally, when a defense attorney is permitted to attack the credibility of a victim/witness based on pending charges in another case, the prejudice of this revealed information far outweighs its probative value.

I would affirm the judgment of sentence. Accordingly, I dissent.