J-S13023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ABDULHAMID M. ALMANSOURI | |
| Appellant | No. 978 WDA 2014 |

Appeal from the Judgment of Sentence May 22, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0016022-2013
CP-02-CR-0016023-2013

BEFORE:  BENDER, P.J.E., MUNDY, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                    **FILED APRIL 14, 2015**

Appellant, Abdulhamid M. Almansouri, appeals from the May 22, 2014 aggregate judgment of sentence of time served followed by five and one-half years' probation after being found guilty of four counts of indecent assault and three counts of harassment.[1]  After careful review, we affirm.

The certified record discloses the following relevant factual background of this case.  Appellant was employed as a cook at Providence Point, a retirement home with assisted living facilities and non-assisted living facilities.  N.T., 4/15/14, at 26-27.  Over the span of several months in 2013, Appellant inappropriately touched four women who also worked in

_____

[1] 18 Pa.C.S.A. §§ 3126(a)(1) and 2709(a)(1), respectively.

food services at Providence Point. The first woman, Kathleen Jumblat, who was a server in the Providence Point deli, testified to two incidents of nonconsensual touching. In the first, Appellant wrapped his arms around her waist from behind. *Id.* at 30. Within weeks of the first incident, when she was alone in the walk-in cooler getting supplies, Appellant approached her from behind without announcing himself and touched her breasts while she had her arms raised to reach a shelf. *Id.* at 30-31. The second woman, Candy Steiner, a cook at Providence Point, also testified that Appellant "grabbed [her] breast[s]" while she was alone in the walk-in cooler. *Id.* at 51. The third woman, Kimberly Seibel, a server for one of the dining rooms at Providence Point, testified to multiple incidents. She stated that they always occurred when she was alone either in the vacant dining room or in the walk-in coolers. *Id.* at 67. The first time, Appellant hugged her, touching her breasts and buttocks, and would not let her go. *Id.* at 73. A few days later, Appellant approached her from behind without announcing himself while she was at her computer workstation and grabbed her breasts. *Id.* at 76-77. Weeks later, Appellant approached her in the walk-in cooler and touched her breasts again. *Id.* at 80.

The fourth woman, Chalise Schultz, worked for a management company that managed the Providence Point dining rooms. She testified that on March 24, 2013, she was sitting at her desk checking e-mails on her computer when Appellant approached her from behind, reached over her

shoulder, and brushed his hand down her body over her breast. *Id.* at 89. Although Appellant did not say what he was doing, Schultz thought he was attempting to reach the tape behind her computer monitor. *Id.* She testified that, while his hand did not linger on her body, "the touch was deliberate." *Id.* at 99. Later that day, she told the managing chef at Providence Point about the incident because her direct supervisor was not present. *Id.* at 100. She later reported the incident to the police after she learned other women had similar experiences with Appellant. *Id.* at 95.

By two criminal informations filed on December 23, 2013, the Commonwealth charged Appellant with the aforementioned offenses. Specifically, the information filed at docket number CP-02-CR0016022-2013 (docket number 16022) charged Appellant with the indecent assault of Schultz while the information filed at docket number CP-02-CR-0016023-2013 (docket number 16023) charged Appellant with three counts each of indecent assault and harassment for the incidents with the three other women. On December 26, 2013, the Commonwealth filed its Pennsylvania Rule of Criminal Procedure 582(B)(1)[2] notice that it intended to join the two

_____

[2] Rule 582 provides, in relevant part, as follows.

**Rule 582. Joinder--Trial of Separate Indictments or Informations**

**(A) Standards**

*(Footnote Continued Next Page)*

cases and try them together. Appellant did not raise a challenge to the joinder. On April 15, 2014, a two-day jury trial commenced. On April 16, 2014, the jury found Appellant guilty of all four counts of indecent assault. The trial court then found Appellant guilty of the three summary counts of harassment. Thereafter, on May 22, 2014, the trial court sentenced

_(Footnote Continued)_ ─────────────────

> (1) Offenses charged in separate indictments or informations may be tried together if:
>
> > (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
> >
> > (b) the offenses charged are based on the same act or transaction.
>
> (2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.
>
> **(B) Procedure**
>
> > (1) Notice that offenses or defendants charged in separate indictments or informations will be tried together shall be in writing and filed with the clerk of courts. A copy of the notice shall be served on the defendant at or before arraignment.

Pa.R.Crim.P. 582(A)-(B)(1).

Appellant to time served followed by five and one-half years' probation.[3]

Appellant did not file a post-sentence motion. Appellant filed a timely notice of appeal on June 16, 2014.[4]

On appeal, Appellant presents the following two issues for our review.

> I. Was the evidence insufficient to prove, beyond a reasonable doubt, that [Appellant] commited [sic] indecent assault, where the evidence

_____

[3] Specifically, the trial court sentenced Appellant to time-served followed by one and one-half years' probation on the indecent assault conviction at count 1 of docket number 16022. On the conviction of indecent assault at count 2 of docket number 16022, the trial court sentenced Appellant to a term of two years' probation. On the conviction of indecent assault on docket number 16023, the trial court sentenced Appellant to a term of two years' probation. All the sentences were imposed to run consecutively. Further, the trial court did not impose any additional penalty for the indecent assault conviction at count 3 of docket number 16022 or for the three convictions of harassment in docket number 16022.

We note there is a discrepancy between the sentencing transcript and the written sentencing order as to Appellant's sentence for the conviction of indecent assault on docket number 16023. Namely, during the sentencing hearing, the trial court indicated it was imposing two months' probation on Appellant, but the written sentencing order and guideline sentence form list Appellant's sentence as two years' probation. We note that this Court has concluded where there is a conflict between the written sentencing order and the transcript of the sentencing hearing, the written order controls. **Commonwealth v. Gordon**, 897 A.2d 504, 507 n.7 (Pa. Super. 2006). Accordingly, we calculate Appellant's aggregate sentence by referring to the written sentencing order. However, this Court has also held that a trial court has the inherent authority to correct clerical mistakes in a written sentencing order when the trial court's intention to impose a certain sentence as stated orally at the sentencing hearing is clear and unambiguous. **Commonwealth v. Borrin**, 12 A.3d 466, 473 (Pa. Super. 2011) (*en banc*).

[4] The trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

> failed to establish that he intentionally touched Schultz for the purpose of arousing sexual desire?
>
> II. Did the trial court err when it instructed the jury to disregard cross[-]examination questioning about Schultz's pending criminal DUI charges, thus denying him the right to confront the witness against him?

Appellant's Brief at 7.[5]

In his first issue, Appellant contests the sufficiency of the evidence the Commonwealth presented to convict him of the indecent assault of Schultz. *Id.* at 16. Specifically, Appellant contends "the Commonwealth failed to prove that he intentionally touched Schultz's breast for the purpose of arousing or gratifying sexual desire." *Id.* Instead, he suggests the contact was "purely incidental and accidental … no more than a non-lingering 'brush' with the back of the hand." *Id.* at 18.

Our standard of review for challenges to the sufficiency of the evidence is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, *Patterson v. Pennsylvania*, --- S.Ct. ---, 2015 WL

_____

[5] Appellant does not challenge his convictions for three counts of indecent assault and three counts of harassment at docket number 16022.

731963 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" *Id.* (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orie*, 88 A.3d 983, 1014 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied, Diamond v. Pennsylvania*, 135 S. Ct. 145 (2014).

Instantly, Appellant was convicted of indecent assault. A person commits indecent assault "if the person has indecent contact with the complainant [or] causes the complainant to have indecent contact with the person … for the purpose of arousing sexual desire in the person or the complainant and[] the person does so without the complainant's consent[.]"

- 7 -

18 Pa.C.S.A. § 3126(a)(1). Appellant concedes that the evidence established he touched Schultz's breast without her consent. *Id.* at 15-16. Appellant's sole argument is that his contact with Schultz's breast was accidental. *Id.* at 16.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict-winner, the evidence belies Appellant's contention that the contact was accidental. Schultz testified that prior to the incident she was alone in the office, seated at her computer with her back to the doorway of the office. N.T., 4/15/14, at 89, 94. Schultz stated that she was not aware anyone else was in the office until the moment Appellant touched her breast. *Id.* at 89. She indicated that Appellant reached over her shoulder and "slipped" his hand "down [her] breast." *Id.* She also stated that "the touch was deliberate" and demonstrated how Appellant touched her to the jury. *Id.* at 99. She was startled by the touching and asked Appellant what he was doing. *Id.* at 89. Appellant did not verbally respond but started to reach for the tape that was behind her computer monitor. *Id.* Schultz moved the tape to the end of her desk and asked Appellant if he needed tape. *Id.* He did not respond, and instead "kind of got mad and stormed out of the office." *Id.* at 90. Schultz reported the incident to the managing chef later that day. *Id.* at 100. This evidence was sufficient to enable the jury to conclude that the contact was intentional and "for the purpose of arousing sexual desire." 18 Pa.C.S.A. § 3126(a)(1). Accordingly, the jury

was free to infer that Appellant intentionally initiated the nonconsensual contact with Schultz's breast to arouse sexual desire in himself or her, and the totality of the evidence supports the jury's verdict beyond a reasonable doubt. *See Patterson*, *supra*. As a result, Appellant is not entitled to relief on his first issue. *See Diamond*, *supra*.

In his second issue, Appellant contends that the trial court erred in excluding evidence of Schultz's pending DUI charges and instructing the jury to disregard that evidence. *Id.*at 19. Appellant maintains he had the right to introduce evidence of Schultz's possible bias in the form of self-interest in the outcome of his trial pursuant to the confrontation clauses of both the Sixth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. *Id.* at 20-22, *citing* **Commonwealth v. Evans**, 512 A.2d 626, 631 (Pa. 1986).

We begin by noting our well-settled standard for deciding issues of the admissibility of evidence.

> The standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d 319 (Pa. 2014).

Before we may reach the merits of this claim, we must address the Commonwealth's contention that Appellant has not preserved this issue for our review. *See* Commonwealth's Brief at 11-17. During the cross-examination of Schultz, the trial court ruled to exclude the evidence that Schultz had a pending DUI charge at the time she reported the indecent assault to police as follows.

> [Defense counsel]: And then you went to the police when?
>
> [Schultz]: In September.
>
> [Defense counsel]: And the police didn't contact you, you contacted them?
>
> [Schultz]: Yes.
>
> [Defense counsel]: And when did you go to the police; do you know the exact day?
>
> [Schultz]: I can't recall.
>
> [Defense counsel]: Does September 23rd sound about right?
>
> [Schultz]: Uh-huh.
>
> [Defense counsel]: I'm not saying this to embarrass you. I have to ask you this question. Did you get in trouble with some criminal charges in August?
>
> [Schultz]: I'm sorry, what?
>
> [Defense counsel]: Did you get in trouble with some criminal charges in August before you went to the police on this incident?
>
> [Schultz]: Yes, but it doesn't have anything to do with this case.

[Defense counsel]: But is it pending?

[Schultz]: Yeah, it is.

[Defense counsel]: Thank you.

[Trial court]: I'm going to ask the jury to disregard the last series of questions and issues. [Schultz] is right, it doesn't have anything to do with this case.

You understand what the rules are?

[Defense counsel]: Yes, ma'am.

[Trial court]: Then I suggest you follow them from now on.

You may step down, Miss Schultz.

N.T., 4/15/14, at 103-104.

After the trial court dismissed the jury following the first day of testimony, the trial court initiated the following exchange with counsel, outside of the presence of the jury.

[Trial court]: You understand to impeach you must have a conviction of *crimen falsi*.

[Defense counsel]: It was not under that basis that I was introducing that evidence.

[Trial court]: What basis was it?

[Defense counsel]: Under **Brady** [**v. Maryland**, 373 U.S. 83 (1963)], in any case, it is my good faith belief that I can get into that from the standpoint that there would be some -- basically the Commonwealth would give her some type of benefit for her testimony.

[Trial court]: That's something you made up.

- 11 -

> [Defense counsel]: I did not make it up, Your Honor.
>
> [Trial court]: No, it is not the law, but you made it up. What is she charged with, murder?
>
> [Defense counsel]: It is a DUI.
>
> [Trial court]: Yeah, that's a good faith belief. She is going to get the same sentence everybody else gets. Do you think that the Commonwealth is going to start bribing victims to come in and testify? Well, I don't.

*Id.* at 110-111.

The trial court thus excluded Schultz's testimony regarding pending DUI charges against her. *Id.* at 104. Pennsylvania Rule of Evidence 103 governs the preservation of a challenge to a ruling to exclude evidence.

> **Rule 103. Rulings on Evidence**
>
> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>
> …
>
> > (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.
>
> **(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a)(2)-(b).

- 12 -

According to Rule 103, Appellant's challenge was preserved once the trial court issued its ruling to exclude the evidence after learning of the substance of the evidence. *See* Pa.R.E. 103(a)(2). The Commonwealth, in arguing that Appellant did not preserve this issue, improperly attempts to place a higher burden of preservation on Appellant than Rule 103 mandates.[6] However, Appellant's challenge was preserved when the trial court made its definitive ruling to exclude the evidence. *See Id.* at 103(b). Accordingly, Appellant was not required to take any further action to preserve the issue. *See Id.* at 103(a)(2)-(b). Therefore, we conclude Appellant's issue is properly before us.

Turning to the merits of Appellant's evidentiary challenge, our Supreme Court, in *Evans*, held that evidence of pending criminal charges

_____

[6] Specifically, the Commonwealth contends that Appellant has not preserved his challenge to the evidentiary ruling because he cited *Brady*, instead of the applicable case, *Evans*. Commonwealth's Brief at 13. Further, the Commonwealth alleges Appellant waived his claims by failing to explain that the rule announced in *Evans*, applied to victims as well as other witnesses and included possible favorable treatment by the prosecution. *Id.* at 14-15. The Commonwealth also contends the issue was waived because Appellant did not inform the court that *Evans* applies to evidence of "potential" bias in addition to evidence of actual bias. The Commonwealth's argument relies on the discussion that took place after the trial court had ruled to exclude the evidence. At the time of this discussion, the issue had been preserved for appellate review. *See* Pa.R.E. 103(b). Therefore, we decline to find waiver based on these arguments. Further, even though Appellant cited the incorrect case, he provided the rationale of *Evans*, *i.e.*, that he sought to show the victim's self-interest in the outcome of the case. N.T., 4/15/14, at 110. Therefore, the Commonwealth's claims are without merit.

against a witness may be introduced to impeach the credibility of the witness, reasoning as follows.

> [W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.
>
> The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise a doubt in the mind of the jury as to whether the prosecution witness is biased. It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.

***Evans***, ***supra*** at 631-632 (footnote omitted). "The opportunity to impeach a witness is particularly important when the determination of a defendant's guilt or innocence depends on the credibility of the questioned witness." ***Commonwealth v. Mullins***, 665 A.2d 1275, 1278 (Pa. Super. 1995). Accordingly, this Court has held that the rule announced in ***Evans*** applies equally to the impeachment of a victim. ***Id.*** However, "[n]ot every denial of an accused's right to cross-examine with respect to an unrelated case requires a new trial. If the error did not control the outcome of the case, it

- 14 -

will be deemed harmless." **Mullins**, **supra** at 1279, *citing* **Delaware v. Van Arsdall**, 475 U.S. 673, 681 (1986).  In conducting a harmless error analysis, we evaluate "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." **Van Arsdall**, **supra** at 684.

Here, Appellant attempted to cross-examine Schultz, the victim, as to her potential bias and possible motive to bring accusations against Appellant.  After careful review, we conclude that even if we were to assume the trial court's exclusion of the testimony regarding Schultz's pending DUI charges was an error under **Evans**, it was a harmless error.[7]  The evidence of pending DUI charges was not strong impeachment.  The crime of DUI does not involve dishonesty, and it did not show Schultz had actual bias. Appellant did not make an offer of proof of a quid-pro-quo agreement between Schultz and the district attorney's office.  There was simply no

---

[7] "This [C]ourt may affirm [the trial court] for any reason, including such reasons not considered by the [trial] court." **Commonwealth v. Clemens**, 66 A.3d 373, 381 n.6 (Pa. Super. 2013) (citation omitted).  Additionally, we "may affirm a judgment based on harmless error even if such an argument is not raised by the parties." **Commonwealth v. Allshouse**, 36 A.3d 163, 182 (Pa. 2012), *cert. denied*, **Allshouse v. Pennsylvania**, 133 S. Ct. 2336 (2013).

evidence that Schultz went to the police with the accusations against Appellant to gain favorable treatment in her DUI case. Instead, Schultz explained that she went to the police because she heard other women had similar experiences with Appellant. N.T., 4/15/14, at 95. Further, the trial court permitted Appellant to impeach Schultz's credibility in other ways. Appellant elicited Schultz's admission that she did not report the incident immediately. *Id.* at 101. Instead, she reported it only in connection with reporting a yelling match later that day between her and Appellant. *Id.* at 102. Schultz did not inquire into the status of her report or follow up by reporting it to her direct supervisor even though she met with her direct supervisor the day following the incident. *Id.* Schultz also conceded that she did not raise the incident again until her unemployment meeting after she was involuntarily terminated. *Id.* at 103. In light of the foregoing, we conclude the error was harmless.

Moreover, Schultz was one of four witnesses who testified to Appellant's indecent assaults. Her allegations fit a pattern that was corroborated by the testimony of the three other victims. Appellant approached all of the victims at Providence Point when they were alone. Once isolated, Appellant then made nonconsensual contact with their breasts. Comparing the corroborating testimony of the other three victims and the extent of impeachment permitted in the cross-examination of Schultz with the limited value of the impeachment evidence leads us to

conclude that the exclusion of the pending DUI charges was harmless error. ***See Mullins***, ***supra***; ***Van Arsdall***, ***supra***.

Based on the foregoing, we affirm the May 22, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/14/2015</u>