J. A15033/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
                                 :             PENNSYLVANIA
                  Appellee     :
                                 :
                v.          :
                               :
WESLEY WATERS,              :
                               :
                Appellant    :    No. 118 EDA 2014

Appeal from the Judgment of Sentence September 5, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0004959-2011

BEFORE: BOWES, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:           **FILED JULY 21, 2015**

Appellant, Wesley Waters, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a jury trial and convictions for robbery,[1] conspiracy,[2] violations of the uniform firearms act,[3] and possession of an instrument of crime.[4] Appellant contends that the court improperly limited his cross-examination by stating that if he cross-examined the police on the extent of their investigation, then

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] 18 Pa.C.S. § 903.

[3] 18 Pa.C.S. §§ 6105(a)(1), 6108.

[4] 18 Pa.C.S. § 907(a).

the testifying police officer could potentially disclose his prior robbery conviction. He claims the court erred by allowing a police officer to opine on whether Appellant acted like a robbery victim. Appellant challenges the court's refusal to issue a **Kloiber**[5] instruction and the prosecutor's comment during her closing arguments. We affirm.

We adopt the facts set forth by the trial court's decision. **See** Trial Ct. Op., 8/25/14, at 1-3. Following a hung jury and mistrial, Appellant was again tried by a jury. At the second trial, the following exchange transpired during the direct examination of Officer Floyd Allen, the arresting officer who was with her partner:

> [Commonwealth]. You get a flash[6] for an armed robbery?
>
> A. Yes.
>
> Q. What do you guys do?
>
> A. Proceed to the area. I happened to be around the corner from there. Beings [sic] as though the flash said it happened on Wayne and Seymour, I took Seymour Street down. As I'm approaching Germantown Avenue, I see [Appellant] to my left with the gray shirt on standing on the corner with another male. They were at that point

---

[5] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

[6] "A flash information is based on a report from the initial officers to investigate the scene of a crime and is broadcast to other police units in the district." **Commonwealth v. Jackson**, 519 A.2d 427, 431 n.3 (Pa. Super. 1986). Instantly, Officer Allen testified that Appellant and codefendant were the only two in the area that matched the description in the flash information, which was "two black males, one with a beard" and a blue, green, or blue-green hoody. N.T., 7/3/13, at 49, 82-84.

separating.  The other male is starting to walk up Seymour into the 14th.  As I get closer, [Appellant] is making a head and hand gesture, pointing like this like he has a gun.

The court: I'm sorry.  Repeat that, please.

[A.] Making a head and hand gesture, like the male going to the left had a gun.  So stopped [Appellant].  Put him in my car for investigation.  Went and stopped the other male.  Brought him back to the car.  At that point [another officer, Officer Sommerville, who had arrived at the scene in response to the flash, *see* N.T. Trial, 7/3/13, at 91-92] recovered a weapon which was a revolver [from a trash can near codefendant Dominic Broadneck[7]].

*    *    *

Q.  There's a map behind you there.  Can you show the ladies and gentlemen of the jury the route that you took to ultimately get to where [Appellant] and codefendant were?

A. This is Seymour here.  Knox and Seymour.  I basically just came straight down from Wayne.  Straight down Seymour to Germantown Avenue.  [Appellant] was standing here on this corner.  As I'm approaching this corner, [Appellant] pointing to the other male who is walking into the 14th District along alongside of I believe it's a church, if I'm not mistaken.  There's a trash can right here which I see the other male stop at.  As [Appellant's] pointing like this, I'm looking at the male.  The male stops at the trash can which is the side of the building and he continues to walk.  Again, I placed [Appellant] into my vehicle for investigation purposes and stopped the other male with the help of Officer Sommerville.

Q. Let me stop you for a second.  Can you describe [Appellant's] demeanor as he's standing on the corner kind of like bobbing his head?

---

[7] The record also indicates codefendant's last name was Broadnax.

A. He's bobbing his head and pointing and making a gesture that the other male had a gun, but he's very cool and very calm. And in my profession—

[Appellant's counsel.] Objection. It's not asking for opinion evidence here.

The court: That's fine. It's denied.

[Commonwealth]. You can continue.

A. In my years of service normally when people were getting robbed, they are excited when they see the police. They are jumping up and down. They are flagging us down: Officer, Officer, this man had a gun. He was not exited [sic] or anything. So for investigation purposes, I placed [Appellant] in my vehicle so I could stop the other male and find out what's going on.

Q. Why did you place [Appellant in your] vehicle [sic] if he's kind of acting like a victim?

[Appellant's counsel.] Objection.

The court: Sustained.

[Commonwealth]. Why did you place [Appellant] in the rear of your car?

A. A lot of times you get a robbery job. People say, oh, this male—

[Appellant's counsel.] Objection. A lot of times? Let's limit it to this case.

The court: That's fine. You can limit it to this case. You can rephrase the question.

[Commonwealth]. Why in this particular case did you place [Appellant] in the rear of your car for investigation purposes?

A. To find out exactly what was going on.

Q. Are you certain this person was a victim at that point?

A. No, I was not.

Q. And what happened once you placed [Appellant] in your vehicle for investigation and then you start pursuing the codefendant?

A. Once I knew that [Appellant] was secured and my partner was safe watching him, that's when Officer Sommerville and I cut the other defendant off. Brought him back to the vehicle so he could be checked and make sure he didn't have a weapon at that point. Until he was safe and we could put him in the vehicle.

N.T., 7/3/13, at 43-48.

Appellant also cross-examined at least one police officer and one detective about the extent of their investigation and asked, *inter alia*, why the police did not lift fingerprints from the victim's credit cards or investigate Appellant's cell phone. ***See id.*** at 75-76, 191-92, 198. For the defense, Appellant's sister, Dashawna Waters, was the sole witness. ***Id.*** at 204-11. She testified she dropped Appellant off near Germantown and Seymour to see his friend. ***Id.*** at 206.

During his closing argument, Appellant argued he was the victim of the instant crimes and the perpetrator was his codefendant, Dominic Broadneck:

There's more obvious problems with this case. This is in fact a high crime area. I mean, it's not pleasant to say that this part of the city of Philadelphia is what we call a high crime area. . . . And we need to put more police officers in those areas because they have more burglaries; they have more robberies; they have more drug sales; they have more shootings.

And guess what? The 39th District is one of those. Officer Waltman's told you and Officer Sommerville told you. This has been identified by the police department and they have tactical units there. They have burglary units out there. They have five squad out there. And for them to say that, well, there was nobody else out there and nobody else could have been out there robbing [Appellant], that's impossible.

. . . So let's just talk about what a robbery is. A robbery is, you know, two or more people getting together and saying, hey, let's go steal some money. And if they say, meet me at 1:00 out at the bank, that's pretty simple; right? I need some money. You do? All right. 1:00 at the bank at 15th and JFK. All right. Be there. They meet there, Rob and they go away.

Ask yourself this: two people at different parts of the city, because we know [Appellant] was by himself. How do they decide we're just going to meet at a moving target that we don't even know where it's going to be or who's going to be there or if anyone is going to be there? How does this happen? How does [Appellant] go from being alone to getting so lucky as to find someone at Seymour and Knox [*i.e.*, the location of the robbery,] and being there at the same time as [codefendant] Broadneck? This is too much.

What evidence do they have to show that was such a coordination that they were able to say, you know what? I think there's going to be a guy right at Knox and Seymour at exactly 2:00. And if you meet here and I meet here and we meet in the middle, there's going to be someone there to rob. It's not that easy. In fact, it's quite difficult. It makes no sense. And they can't prove how that could have possibly happened.

Another thing that's very clear. The gun and the proceeds are all on [codefendant] Dominic Broadneck. If someone is a victim of a robbery and they say, hey, that's the guy that did it and they got the gun and the proceeds, well, it's pretty clear to say that that's the right person. [Appellant] had none of that. He didn't have the gun. He

didn't have the credit cards. He didn't have the cell phone. He didn't have the wallet. He didn't have the cash.

*    *    *

Now, there's [Appellant's] head gesture. This head gesture, this could have been number one. This could have been number one or number two. Moving your head towards another guy who has a gun? Well, I guess that now means when you go like this and you point to the other person who has a gun, you're saying to the police, hey, I did it, too. I'm a robber, too; right? That's what he must have been saying. Or was he trying to tell the police officer, hey, that guy just robbed me? That is reasonable doubt in and of itself.

He didn't run away. He didn't hide. He didn't start throwing things out of his pockets. He stands there on the corner. That guy has a gun. He's not saying he's got a gun because we're out robbing people together. This is nonsense. This is absolute nonsense.

N.T., 7/5/13, at 30-33, 35-36.

In response to Appellant's closing argument that he was not the perpetrator, the prosecutor summarized video surveillance footage:

This video, ladies and gentlemen, is worth a 1,000 words. What do you have on this video? Let's talk about the timeline. This video helps us figure out exactly what's going on. All right. He says he doesn't know what time the robbery happened. Well, I can do math and I know you can do math. So I can tell you what time the robbery happened? All right.

Here we are, 2:00 a.m. and one second. You have [Appellant] walking towards Knox and Seymour in the direction of the robbery. He's headed right there. He's headed right towards Mr. Coleman. He's walking there at 2:00.02. 2:00 a.m. He's walking there at 2:00.04. 2:05.32 and somewhere between 2:06. That's when Mr. Coleman is being robbed. Does he have time to get there? Yes. Detective O'Neill told you, I walked that and I just

walked it at a normal pace and I got there at five minutes and two seconds. But did he make it five blocks? Five regular city blocks? Absolutely.

How did we know when the robbery happened? 2:08.31. That C.A.D.[8] report that counsel was talking about, well, 2:08.31 is when you get the call, the 911 dispatch. Mr. Coleman sat there and said it took me two to three minutes to get home tops. I called 911. My wife called 911 immediately. That's how we know when the robbery is taking place.

When do we see [Appellant] again? 2:11.7. And where do we see him? I'll tell you. He's walking back from the direction of the robbery. He's walking back from Knox on Seymour. That's where he's coming from because he just robbed Mr. Coleman. And remember the minute behind him? His codefendant, Dominic Broadneck. That person wearing all dark clothing, dark boots. The guy on that video, you see him in the corner. He's walking back from Knox and Seymour, too, the same direction a minute behind this defendant. Dark pants, dark boots. That's Dominic Broadneck. You heard the description. That's where he is.

The crime is solved on the street by officers within minutes. Ladies and gentlemen, that video is something he can't explain away. Well, he wants to say there was a cab somewhere in that video? Okay. Germantown Cab Company. What, did he call a cab? Is someone picking him up? Is that why he was there? He has five $1's in his pocket. How is he going to pay for that cab. Where was he going? Is he going to get in the cab and go somewhere with the money he didn't have to pay for the cab or is he going to Portico Street to take a cab a half a block. That doesn't make sense. Because what makes sense is that timeline there.

Okay. So he's stopped a couple minutes later and the codefendant is tossing the gun; right? The gun is not in

---

[8] Criminal Arrest and Disposition Report.

his waistband. So what? We know where the gun was when the robbery was happening. It was in his waistband. He was using it to paralyze Mr. Coleman to have him give up all his items. Okay. Crime for dummies 101. Read the first couple chapters. I just committed an armed robbery. I got the gun and I got the proceeds. I'm standing like a sitting duck on the corner of Germantown and Seymour. I'm sitting right here. I got Officer Sommerville coming down this way. I got Officers Allen and Officer Lee Coming up this way. I'm done. I'm toast.

A crime for dummies 101. Get rid of the gun, get rid of the proceeds and then stand there and go like this. It's that guy. It was him. Officer Allen didn't buy it. No one bought it. And I know you guy's don't buy it. That's not how someone acts when they were being robbed. **If he was a victim, he would have been up there telling the story.** He wasn't the victim. He was one of the robbers.

[Appellant's counsel]: Objection.

The court: Noted.

*Id.* at 91-94 (emphasis added). The court did not caution the jury at that point.

After the prosecutor completed her closing and the jury was excused, Appellant's counsel formally moved for mistrial:

[Appellant's counsel]: Briefly, your Honor, I have a motion for mistrial. During the prosecution's closing, there was a line of testimony in which the prosecutor actually with her arms signaled towards the witness box and stated that he, referring to [Appellant], never testified. And it was in the context of claiming that he was a victim. He was the person who was robbed that day and he never testified. That's clearly prohibited as to argument. It infringes on my client's Fifth Amendment right to remain silent and also his Fifth Amendment right not to speak on his own half [sic] at a trial. Such argument and such blatant gesturing, emphasizing to the jury is clearly prosecutorial misconduct

and inadmissible argument and those are grounds for a mistrial.

The court: And [assistant district attorney?]

[Assistant district attorney]: Your Honor, counsel argued during his closing arguments that he was a victim. And my reference to the fact that he was a victim, they would have known about it, your Honor. It's not a violation of the Fifth Amendment right. I don't think, your Honor, it is improper.

The court: I will deny the motion for mistrial. I think that the instructions that I will give including as to whose burden it is, the presumption of innocence and his failure to testify, that there can be no inference of guilt or other inference. An adverse inference is sufficient in my view to guide the jury as to how they should decide this case.

*Id.* at 101-03.

The court, during its charge, instructed the jury as follows:

It is entirely up to the defendant in very criminal trial whether or not to testify. He has an absolute right founded under the Constitution to remain silent. You must not draw any inference of guilt or any other inference adverse to the defendant from the fact he did not testify.

*Id.* at 110-11.

The jury convicted Appellant, and the court sentenced Appellant to an aggregate sentence of seven to twenty years' incarceration. Appellant filed a timely post-sentence motion, which the court denied that same day. Appellant did not file a notice of appeal within thirty days, but later filed a successful Post Conviction Relief Act[9] petition to reinstate his direct appellate

---

[9] 42 Pa.C.S. §§ 9541-9546.

rights *nunc pro tunc*. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues on appeal:

Did trial court err in limiting Appellant's cross examination of the lead detective regarding the extent of the investigation?

Did the trial court err in permitting a Philadelphia police officer to testify as to his opinion that Appellant did not act like the victim of a robbery?

Was Appellant denied a fair trial and due process of law by the Court permitting the prosecutor in her closing remarks to comment upon [A]ppellant's silence?

Was Appellant entitled to a ***Kloiber*** jury charge?

Appellant's Brief at 4.

In support of his first issue, Appellant claims that two detectives interviewed him and prepared his five-page statement, although he concedes he never introduced the statement into evidence. ***Id.*** at 10, 11 n.3. Appellant claims that his statement memorialized his allegations that he was a victim of the robbery and identified four potential defense witnesses, including his sister, Dashawna Waters,[10] and a cab driver. ***Id.*** He insists the police refused to interview any of his witnesses. ***Id.*** Although he did not attempt to introduce the statement at trial, Appellant argues the prosecutor "fought to keep out any mention of this statement or that the

---

[10] As noted ***supra***, she testified at Appellant's trial.

police refused to interview potentially exculpatory witnesses." *Id.* at 10.

Appellant asserts the court ruled that if he questioned the police about the

"nature and extent" of the police investigation, then the Commonwealth

could introduce evidence of Appellant's prior conviction for robbery.[11] *Id.* at

11. Appellant contends the court's conditional ruling was error as it

constituted a *de facto* prohibition of his right to confront and cross-examine

the witnesses against him. *Id.* at 13.

The Commonwealth counters that the two detectives who purportedly

recorded Appellant's statement did not testify at trial.[12] Commonwealth's

Brief at 11. In conjunction with the fact that Appellant's statement was

never mentioned or introduced into evidence, the Commonwealth contends

---

[11] The trial court's ruling follows:

> The court: And the second would be as to investigating
> any of the named witnesses that [Appellant] had provided
> to the detectives and the extent of his investigation. At
> least in my view, if you are to challenge the detective as to
> why he did not interview them, in my view you're opening
> the door to whatever his truthful response would be. And
> if that includes that he thought that that [sic] they were
> the right person based in part on a prior conviction for
> robbery in the same area, that comes through.

N.T., 7/2/14, at 248-49.

[12] Both detectives were apparently on preplanned vacations scheduled that
week, each of which was requested in December of 2012. N.T., 7/3/14, at
183-84, 199-200.

Appellant's claim lacks merit. Alternatively, it claims the court's ruling was correct:

> First, in the absence of any testimony from [Appellant], it was entirely proper for the court to rule that he could not use his cross-examination as a back door through which to bring in his own hearsay statement to police, in contravention of Pa.R.Evid. 802.[4] Second, the trial court was well within its discretion to rule that [Appellant] could question the detectives about their failure to investigate certain supposed witnesses, but that doing so might open the door to their truthful responses that they believed they had the right person based on the evidence and [Appellant's] prior conviction for a similar robbery in the same neighborhood.
>
> ---
>
> [4] Even now on appeal, [Appellant] utilizes a similar back-door approach by inappropriately attaching the statement he gave to police to his brief. He does so despite explicitly acknowledging that "the Statement was never introduced into evidence in the trial" and, thus, it is not a part of the certified record on appeal.

Commonwealth's Brief at 12-13 & n.4 (citations omitted). The Commonwealth also notes Appellant "repeatedly questioned the officers through the trial regarding their failure to investigate certain aspects of the case (*See, e.g.*, N.T. 7/3/2013, 75-76) (asking Officer Allen on cross-examination why he did not speak with the cab driver who was on the scene or investigate [Appellant's] cell phone to see if he had made any phone calls)."[13] *Id.* at 13. We agree that Appellant is not entitled to relief.

---

[13] The officer responded that it was the detective's job, and not her job, to contact the cab driver or retrieve Appellant's cell phone. N.T., 7/3/13, at 76.

> We initially note that cross-examination is the primary method for testing the believability of a witness and the truth of his testimony. Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness' motive for testifying. The scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion.

*Commonwealth v. Chmiel*, 889 A.2d 501, 527 (Pa. 2005) (citations and quotation marks omitted); *see also* Pa.R.E. 611(b) & cmt. Similarly, the limits placed on cross-examination also lie within the discretion of the trial court. *Commonwealth v. Mullins*, 665 A.2d 1275, 1277 (Pa. Super. 1995). Any error is subject to the harmless error standard. *Id.* at 1279.

With respect to a written statement by the defendant, Pa.R.E. 801 and 802 apply:

> **(a) Statement.** "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.
>
> **(b) Declarant.** "Declarant" means the person who made the statement.
>
> **(c) Hearsay.** "Hearsay" means a statement that
>
> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801. "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

Instantly, and regarding Appellant's statement, we agree with the trial court that Appellant could not elicit the contents of his written statement via cross-examination of the two detectives—who did not even testify—without sufficient evidentiary foundation for the statement. ***See id.*** Indeed, Appellant conceded he did not introduce or attempt to introduce the statement at trial, although he included it as an exhibit to his appellate brief. ***See*** Appellant's Brief at 11 n.3. Appellant cannot attempt to introduce the contents of his statement for the truth of the matter asserted therein via other means, *i.e.*, cross-examination. Under these circumstances, the trial court properly exercised its discretion to limit Appellant's cross-examination. ***See Chmiel***, 889 A.2d at 527; ***Mullins***, 665 A.2d at 1277.

As for Appellant's claim that the court limited his cross-examination of any police witness, we discern no basis for this contention. Rather, the court cautioned Appellant that if he elected to question the police about why they did not interview the witnesses he identified in his statement, then he must accept the response of the police, including their belief that Appellant was the perpetrator based on his prior conviction for robbery in the same area. ***See*** N.T., 7/2/14, at 248-49. Indeed, Appellant asked the police about the extent of their investigation, including whether they contacted the cab driver, reviewed Appellant's cell phone, or obtained fingerprints from the victim's credit cards. ***See*** N.T., 7/3/13, at 75-76, 191-92, 198. The police, however, did not testify about their belief that Appellant was the perpetrator

- 15 -

because of a prior, similar robbery conviction. Thus, we construe the court's instruction as more cautionary and observational and not an absolute command. *See* N.T., 7/2/13, at 248-49 (stating, "**if** you are to challenge . . . , in my view you're opening the door . . . ."). And even if we construed this conditional language as a limiting instruction, then we discern no error from the court's rulings regarding the scope of Appellant's cross-examination of the police about the nature and extent of their investigation. *See, e.g.*, N.T. 7/3/13, at 198. Assuming error, however, after viewing the record in the Commonwealth's favor, we discern no "reasonable possibility that [it] might have contributed to [Appellant's] conviction." *See Mullins*, 665 A.2d at 1279. Accordingly, we discern no abuse of discretion. *See Chmiel*, 889 A.2d at 527; *Mullins*, 665 A.2d at 1277.

Appellant next argues that the court erred by permitting the Commonwealth to permit Officer Allen to testify that he was not acting like a victim. The standard of review of a "trial court's decision to admit evidence is subject to review for an abuse of discretion." *Commonwealth v. Hairston*, 84 A.3d 657, 664 (Pa. 2014) (citation omitted). After careful consideration of the parties' arguments, the certified record, and the decision by the Honorable Daniel Anders, we affirm this issue on the basis of the trial court's decision as we discern no abuse of discretion. *See* Trial Ct. Op. at 11-13 (holding it sustained counsel's objection to whether Appellant acted "like a victim" and it was permissible for police to testify about

Appellant's demeanor on the street corner and reason for placing Appellant in back of vehicle); *see also Hairston*, 84 A.3d at 664.

We summarize Appellant's argument in support of his third issue. He contends the Commonwealth, in its closing statement, argued that if he was the victim, then he would have testified. *Id.* at 21 (referencing, as set forth above, N.T., 7/5/13, at 94). Appellant claims the prejudice was not cured by the court's "standard instruction that no inference should be drawn" by his refusal to testify. *Id.* at 20. He asserts the Commonwealth's statement was doubly unfair because it possessed Appellant's statement to the police that alleged he was the victim and identified four corroborative witnesses that the police did not interview. Appellant notes that in conjunction with Officer Allen's testimony regarding whether he was a victim, he concludes a new trial is warranted. We hold Appellant has not established the error was so prejudicial as to warrant a new trial.

In *Commonwealth v. Wright*, 961 A.2d 119 (Pa. 2008), our Supreme Court stated:

> The review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. . . . A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.
>
> A comment is forbidden if the language used by the prosecutor is intended to create for the jury an adverse inference from the failure of the defendant to testify. It is well settled that any comment by the prosecution or the

court violates 42 Pa.C.S. § 5941[14] if it draws attention to or focuses on the fact that no one except the defendant can rebut the Commonwealth's case.

*Id.* at 142 (citations and quotation marks omitted).

In *Wright*, the prosecutor sarcastically stated the following during his closing arguments:

Tammy Mowery did it. That's why [the defendant] has 60 rounds of ammunition on him, not counting what's in the gun, almost twice what a police officer would call—or carry, I'm sorry, 'cause Tammy Mowery did it. That's why [the defendant] has the shells, the bullets, the live rounds. Tammy Mowery did it. That's why [the defendant] had the Taser and the Pepper Spray, 'cause Tammy Mowery did it. And then, of course, he didn't say anything, but the police, of course, lying indicated to you that he basically confessed. I just toasted a guy and I know I'm going to jail. Don't try to tell me I'm not. I know what happened. But that's all made up. That's all made up. Truth is, folks, two best Commonwealth witnesses here are the *two that didn't testify in person*. Jim Mowery, who says [the defendant] broke in my house shootin', and [the defendant] says, yeah, I killed him.

---

[14] This statute states as follows:

**(a) General rule.—**Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal proceeding, to offer himself as a witness, be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial.

42 Pa.C.S. § 5941.

*Id.* at 141. The prosecutor then concluded:

> As I said before, I suggest two of the best witnesses that were here are the ones that did not testify—[the defendant], who admitted to doin' it, and Jim Mowery, who pointed out his killer, even though he's not here to face ya and tell you that in person.

*Id.* The defendant's counsel then moved for a mistrial based on the prosecutor's references to the defendant's failure to testify. *Id.*

> The court denied the motion, but immediately gave a cautionary instruction: "The defendant's right to remain silent . . . is absolutely in place. And you shouldn't take any of the Commonwealth's argument that you heard as in any way disturbing that right to remain silent or that burden of proof. . . . I'll talk with you in more detail about all of those. . . ."

*Id.*

Our Supreme Court held that the prosecutor's comments were inappropriate but nonetheless held the error was harmless given the overwhelming evidence of the defendant's guilt:

> There is a fine line between vigorously arguing the evidence and drawing attention to appellant's decision not to testify. As stated above, this Court vigilantly protects the right to remain silent and recognizes references to an accused's exercise of this right may jeopardize the presumption of innocence in the jury's mind. For this reason, though we believe no impropriety was intended, we cannot find the prosecutor's comments were not inappropriate; the spirit of "oratorical flare," as characterized by the Commonwealth, must bend to the accused's fundamental right to remain silent.
>
> However, not every reference to a defendant's failure to testify automatically requires a new trial; the verdict can still be sustained if the error was harmless. An error is harmless if it could not have contributed to the verdict. In

> other words, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction. We have found harmless error where:
>
> (1) the error did not prejudice the defendant or the prejudice was *de minimis*;
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.
>
> The Commonwealth has the burden of proving harmless error beyond a reasonable doubt.

*Id.* at 143 (some punctuation and citations omitted). The **Wright** Court held the Commonwealth met its burden as "[t]his was not a close case, where a remark such as the one the prosecutor made can change the flow of a trial—this trial was a river of evidence, and its flow was unaffected by this reference." *Id.* at 144.

The **Wright** Court additionally held that "the trial court's curative instructions curtailed any damage the prosecutor's reference could have caused." *Id.*

> The court issued an immediate cautionary instruction regarding [the defendant's] right to remain silent and the Commonwealth's burden of proof. During jury instructions, the court charged the jury at length regarding appellant's right to remain silent and specifically warned the jury against drawing any adverse inferences from the prosecutor's comments.

*Id.* "Further, appellant has offered nothing to rebut the presumption the jury followed the trial court's instructions." *Id.* Accordingly, our Supreme Court, although holding the prosecutor erred by commenting that the defendant did not testify, concluded the error was harmless given, *inter alia*, the overwhelming evidence of guilt, the court's jury charge regarding the defendant's right to not testify, and the absence of any evidence the jury disobeyed the trial court's charge. *Id.*

Instantly, assuming without deciding that the prosecutor erred by gesturing to the empty witness box and opining that Appellant could have testified,[15] *see Wright*, 961 A.2d at 141, we ascertain whether the error was harmless. With respect to evidence of guilt,[16] the victim identified Appellant and Broadneck as the people that robbed him on the night of the robbery, at the preliminary hearing, and at trial. *See* Trial Ct. Op. at 3-4, 19. Video surveillance placed them both near the scene at the time of the robbery. *See* N.T., 7/3/13, at 43-48. Similar to the trial court in *Wright*, the instant trial court charged the jury regarding Appellant's right to remain silent, cautioned the jury about drawing any adverse inferences because Appellant did not testify, and Appellant has not rebutted the presumption the jury followed the trial court's instructions. *See id.* Although the court did

---

[15] This was wholly unnecessary.

[16] Appellant has not challenged the sufficiency of evidence for his convictions.

not issue an immediate cautionary instruction, *cf. Wright*, 961 A.2d at 141, we cannot conclude the prosecutor's error was prejudicial given the evidence, the jury charge regarding Appellant's right to remain silent, and the lack of evidence the jury disobeyed the trial court's instructions. *Cf. Wright*, 961 A.2d at 141-44.

Appellant lastly argues the court erred by not instructing the jury pursuant to *Kloiber*. He contends the circumstances under which the victim allegedly observed him and the victim's inconsistent testimony regarding aspects of the encounter warranted a *Kloiber* charge. We hold Appellant is due no relief.

"We evaluate whether a *Kloiber* instruction is necessary under an abuse of discretion standard." *Commonwealth v. Sanders*, 42 A.3d 325, 332-33 (Pa. Super. 2012). "Pursuant to *Kloiber*, where a witness was not in a position to observe the assailant clearly, or had previously failed to identify the defendant, the court must instruct the jury to receive the witness' identification testimony with caution." *Chmiel*, 889 A.2d at 541 (citations omitted); *Commonwealth v. Rollins*, 738 A.2d 435, 448 n.14 (Pa. 1999) ("A *Kloiber* charge instructs the jury that a eyewitness' identification should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past."). After careful review of the certified record—

including the victim's testimony identifying Appellant—the parties' briefs, and the well-reasoned decision of the trial court, we affirm on the basis of the trial court's decision. **See** Trial Ct. Op. at 17-21 (holding record establishes victim unequivocally and without hesitation identified Appellant on the night of the robbery, at the preliminary hearing, and at trial). For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2015

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

**RECEIVED**

**AUG 25 2014**

**APPEALS/POST TRIAL**

COMMONWEALTH OF PENNSYLVANIA  :    CP-51-CR-0004959-2011

CP-51-CR-0004959-2011 Comm. v. Waters, Wesley
Opinion

VS.

|||||||||||||||||||||||||||||
7190385271

118 EDA 2013 14

WESLEY WATERS

OPINION

Following a jury trial, Defendant Wesley Waters was convicted of robbery, conspiracy, two violations of the uniform firearms act, and possession of an instrument of crime. The trial court sentenced Defendant to a total of 7 to 20 years of incarceration. Defendant filed a timely appeal (after his rights were reinstated *nunc pro tunc* by way of a PCRA petition) in which he argues that: (1) the verdict was against the weight of the evidence, (2) the preliminary hearing judge erred in denying his motion for a lineup, (3) the trial court erred in limiting his cross-examination of a police detective, (4) the trial court erred in permitting a Philadelphia police officer to testify as a fact witness and state his opinion that Defendant acted like a co-defendant and not like a victim, (5) the prosecutor's improper comments upon Defendant's silence in her closing argument denied Defendant a fair trial and due process of law and was a sufficient basis for a mistrial, which was denied in error, and (6) the trial court erred in denying Defendant's request for a *Kloiber* instruction regarding the victim's identification testimony. For the reasons stated below, the Superior Court should affirm the judgment of sentence.

FACTUAL BACKGROUND

1.    The Robbery At 100 West Seymour Street

In the early hours of February 24, 2011, Lorenzo Coleman went for a walk around his neighborhood to "cool off" after an argument with his wife. Defendant and co-defendant Dominic Broadnax approached Coleman near 100 West Seymour Street at approximately

2:18am. Defendant lifted up his blue hoodie (which had writing on it) to show a gun with a black handle tucked into his pants. Defendant stopped about five feet away from Coleman and said, "Old head, you know what it is." Coleman removed his wallet and cell phone, placed them on the ground, and walked away from the two men. As Coleman was walking away, Defendant looked through the wallet and said, "Old head, there better be something in there." Coleman immediately returned to his home and informed his wife of the incident. Coleman's wife called 911. Shortly thereafter a dispatcher sent out a radio call to officers in the area informing them that two black males, one wearing a blue hoodie with writing on it and the other in dark clothing, just committed a gunpoint robbery. N.T. 07/02/2013 at 43-54, 176.

15 minutes after the radio call, Officer Erika Lee and her partner Officer Floyd Allen were driving eastbound on Seymour Street approaching Germantown Avenue when they observed Defendant and Broadnax walking along Seymour Street. They were wearing clothing that matched the descriptions from the radio call. Defendant and Broadnax were only five blocks from the location where Coleman was robbed. Upon observing the officers, Defendant stopped at the intersection of Germantown Avenue and Seymour Street, and Broadnax proceeded eastbound on Seymour. Officer Lee pulled over and stopped Defendant; Officer Allen stopped Broadnax. Prior to stopping Broadnax, Officer Allen witnessed him discard small items later identified as Coleman's credit cards to the ground and stop briefly at a recycling bin. Officer Allen heard Broadnax wrestling around in the bin, and heard a distinct noise come from the recycling bin. From the recycling bin, Officer Allen recovered a silver Smith and Wesson .347 magnum revolver with a black handle, which Coleman identified at trial as the gun used in the robbery. N.T. 07/02/2013 at 54-68, 224-30; N.T. 07/03/2013 at 41-59.

As Officers Lee and Allen held Defendant and Broadnax at the scene, Officers Ryan Waltman and David Palmer went to Coleman's house. The officers drove Coleman to where

2

Officers Lee and Allen were holding Defendant and Broadnax. Coleman identified without hesitation Defendant and Broadnax as the men who robbed him. N.T. 07/02/2013 at 56-58.

2.     Testimony Of Lorenzo Coleman

At trial, Coleman testified that, while he was going for a walk around his neighborhood on the night of February 24, 2011, two men approached him at 100 West Seymour Street. One of the men was wearing a blue hoodie with writing on it and lifted up his shirt to reveal a gun. Coleman handed over his wallet and cell phone and then he returned home, where his wife called 911. Two officers quickly arrived at Coleman's house and drove him to the intersection of Seymour Street and Germantown Avenue. Coleman remained in the car while Defendant and Broadnax were brought within his view so he could identify them. Coleman testified that the area was well-lit and he could clearly see Defendant from five feet away. Coleman described Defendant as lighter skinned, about five feet six inches tall, weighing about 150 pounds, and having sideburns. Coleman identified Defendant as the person who robbed him with a gun on the night of the robbery as well as at the preliminary hearing and at trial. Coleman stated he was "100% sure" that Defendant was the person who robbed him with a gun that night. N.T. 07/02/2013 at 147, 156. Coleman also verified photographs the police had taken of the firearm Defendant used and his own cell phone and credit cards that Defendant had stolen. N.T 07/02/2013 at 44-58, 176.

DISCUSSION

1.     The Verdict Was Not Against The Weight Of The Evidence

Defendant asserts that the verdict was against the weight of the evidence. When evaluating the weight of the evidence, the standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot

3

> substitute its judgment for that of the finder of fact. Thus, [the Superior Court] may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. Super. Ct. 2003).

At trial, the evidence of record included the following testimony. Defendant and Broadnax approached Coleman together late at night while he was alone. Defendant showed to Coleman a gun tucked into his pants and then said to him, "Old head, you know what it is." In response, Coleman surrendered his wallet and cell phone to Defendant. Coleman immediately left the scene, and Defendant and Broadnax took the fruits of their robbery.

Coleman's wife alerted the authorities, and Coleman provided descriptions of Defendant and Broadnax to police. Defendant and Broadnax were stopped within minutes of and only a few blocks from the robbery. Defendant and Broadnax matched Coleman's descriptions including the clothing that he was wearing. The officers observed Broadnax discarding what they later learned were Coleman's credit cards. On the night of the robbery, Coleman immediately identified without hesitation both Defendant and Broadnax. Coleman also identified Defendant at the preliminary hearing and at trial. Coleman stated he was "100% sure" that Defendant was the person who robbed him with a gun that night. N.T. 07/02/2013 at 147, 156. Coleman identified the recovered weapon as the same revolver that Defendant had showed to him while it was tucked into his pants during the robbery. In addition to this evidence, there is no basis to disturb the jury's credibility determination, *i.e.*, to have credited Coleman's testimony.

In light of the overwhelming evidence discussed above, the verdict is not contrary to the evidence and does not shock one's sense of justice.

4

2.      The Court Properly Denied Defendant's Motion For A Lineup

Defendant argues that the preliminary hearing court improperly denied his oral motion requesting a lineup identification procedure prior to his preliminary hearing. The grant or denial of a request for a lineup is within the sound discretion of the court, and such a decision will not be disturbed on review absent an abuse of discretion. *Commonwealth v. Carter*, 643 A.2d 61 (Pa. Super. Ct. 1994). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Edwards*, 762 A.2d 382, 386 (Pa. Super. Ct. 2000). Defendant's argument fails on two grounds: his request was never submitted in writing and in advance of the preliminary hearing, and the preliminary hearing court's decision was an appropriate exercise of discretion.

a.      Defendant Failed To Properly Request A Lineup
In Writing And Prior To The Preliminary Hearing

A defendant has a duty to seek a lineup in writing and prior to a preliminary hearing. *Commonwealth v. Robinson*, 5 A.3d 339 (Pa. Super. Ct. 2010). Although a court retains discretion to overlook the failure to make a request until the day of the scheduled preliminary hearing, there is no requirement to do so. *Id.* If a defendant fails to submit a written request for a lineup in advance of the preliminary hearing, then he has waived any objection and may not complain about the court's decision to deny the request on appeal. *Id.*

Here, Defendant failed to submit a written request for a lineup. Defendant also failed to request the lineup in advance of the scheduled preliminary hearing. Instead, defense counsel made on oral motion for a lineup on the day of his preliminary hearing. Based on his failure to

5

seek a lineup in writing and prior to the preliminary hearing, Defendant waived any error regarding the denial of his lineup request. *Robinson*, 5 A.3d at 342.

        b.      The Court Did Not Abuse Its Discretion In Denying The Lineup Request

Even assuming Defendant has not waived this alleged error, the preliminary hearing court's decision was not an abuse of discretion. A defendant has no constitutional right to a line-up, and the court must examine the reliability of an identification using a totality of the circumstances test. *Commonwealth v. Edwards*, 762 A.2d 382 (Pa. Super. Ct. 2000). To determine whether to grant a lineup request, the court must examine the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Id*.

The preliminary hearing court received the following representations from counsel during the brief exchange regarding the lineup motion:

> **MR. JARRETT**: Your Honor, we still have a lineup motion. We are unable to agree.
>
> **THE COURT**: Tell me the facts of the identification.
>
> **MR. JARRETT**: It is a gunpoint robbery, Your Honor. No one apprehended at the scene. My client is some five or six blocks away. Some 15 minutes later, the police approach him. He is cooperative, shows him a license, ask him to get in the car and they put another person in the car. Another car stops, gets a third person. They evidently pull up to a location. There are three police cars, cherry tops going. They pull one, two, three out of the car. The gentleman says one, two, three. It is an unduly suggestive on the street lineup, Your Honor.
>
> **MS. POWERS**: Your Honor, the information I have from the complainant and from the officer differs from what Counsel just said with respect to the number of people involved. They were on foot. It was two people. So there was no car and there wasn't a third person.

6

MR. JARRETT: No. I am saying police car. They were pulled out of a police car.

MS. POWERS: They were stopped on foot.

THE COURT: So it is a stand-up and it was two individuals?

MS. POWERS: Two individuals.

THE COURT: On the street?

MS. POWERS: Yes.

THE COURT: Within 15 minutes?

MS. POWERS: Yes.

THE COURT: How dark was it?

MS. POWERS: It was in the morning, 2:00 a.m. It was dark. However, the Defendants were side-by-side. They were flanking the complainant; one was on the left, one was on the right. I am just going for his opportunity to actually have a conversation with the Defendant. The Defendant said give it up. He looked at him. He has the gun. They are face-to-face. The complainant can tell you he was the same height as him approximately. His complexion was a little lighter than him. He had about the same build as the complaining witness.

THE COURT: Is this cross-racial?

MS. POWERS: No. African-American.

MR. JARRETT: It is not cross-racial.

MS. POWERS: The complainant then gave up his items, literally left them on the step, turned around and the Defendant said there better be something in there, old head. They are having a conversation while the Defendant has the gun pointed at him.

THE COURT: This goes on for how long?

MS. POWERS: Probably a minute, Your Honor. The police come. Within 15 minutes, as Counsel said, the officers come, stop the Defendant who is wearing the same exact thing.

7

**MR. JARRETT**: There is nothing seized from my client whatsoever.

**MS. POWERS**: Because the codefendant is chucking items to the side as the police come.

**THE COURT**: Based on what I heard from both Counsel, I will deny your lineup.

N.T. 04/28/2011 at 2-5.

The preliminary hearing court carefully considered the relevant factors and made appropriate inquiries during the hearing on the motion for a lineup. In rejecting the lineup request, the court considered the following: (1) Coleman identified Defendant after a good opportunity to view Defendant face-to-face at close range during the robbery; (2) Coleman focused his attention on Defendant for approximately one minute during the robbery; (3) Coleman provided an accurate description of Defendant and his clothing prior to any identification; and (4) the short time span of fifteen minutes that elapsed between the robbery and Coleman's on-scene identification of Defendant. Under the totality of these circumstances, the court determined that the identification was reliable and a lineup was not necessary. The court did not abuse its discretion because its judgment was not manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. Therefore, the court properly denied Defendant's oral motion for a lineup. *See Edwards*, 762 A.2d at 386.

3.     The Trial Court's Evidentiary Rulings During
       Cross-Examination Of The Police Detective Were Proper

Defendant argues that the trial court erred by prohibiting certain cross-examination of the detective regarding Defendant's statement, specifically (1) the existence of Defendant's statement as evidence of his cooperation with police during the investigation, and (2) the names of witnesses that Defendant told the detective, which would undermine the thoroughness of the investigation. A trial court has broad discretion to determine whether evidence is admissible, and

8

a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion. *Commonwealth v. Benson*, 10 A.3d 1268, 1274 (Pa. Super. Ct. 2010). An abuse of discretion is not simply an error of judgment but an overriding or misapplication of the law. *Id*. Accordingly, a ruling of evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. Ct. 2013).

Defendant intended to use the existence of Defendant's statement and its contents to demonstrate his cooperation with police. Additionally, Defendant sought to impeach a police detective by using Defendant's statement to undermine the extent of the police investigation. In his statement to detectives, Defendant provided the names of potential defense witnesses, who were never investigated by the detective. The trial court placed the following ruling on the record regarding the cross-examination of the detective with Defendant's statement:

> **The Court:** As to the Defendant's statement, if you wish to make some reference to the Defendant's extended cooperation with the officers or detectives or anyone else. In my view the fact that he gave a statement would be evidence of cooperation. But the statement, itself, and what may be contained in there obviously would not come in.
>
> And I do think an appropriate limitation would be based upon the fact that there could be some backdoor inference that there's exculpatory information in there which would be bypassing around at least getting that in without having the Defendant take the stand.
>
> I would limit you to simply asking the detective was he cooperative and his response would be not in reference to giving any statement. And your objection, I'm not sure if you're objecting to that.
>
> **Defense Counsel:** No. I understand what you're saying.
>
> **The Court:** And second would be as to investigating any of the named witnesses that the Defendant had provided to the detectives and the extent of his investigation. At least in my view, if you are to challenge the detective as to why he did not interview them, in

9

my view you're opening the door to whatever his truthful response would be. And if that includes that he thought that that [*sic*] they were the right person based in part on a prior conviction for robbery in the same area, that comes through.

N.T. 07/02/2013 at 247-50. Defense counsel timely objected to both of these rulings.

As an initial matter, the trial court did not entirely preclude Defendant from cross-examining the detectives regarding these lines of questioning. Indeed, the trial court permitted defense counsel to question the detective regarding Defendant's cooperation with the police investigation. *Id.* at 247. The trial court clearly ruled, however, that the two lines of questions would either (1) be improper without competent testimony from Defendant, or (2) open the door to other evidence (which, in fact, the trial court precluded based upon Defendant's pre-trial objection to the Commonwealth's 404(b) motion)[1]. As to the first line of question regarding Defendant's statement as evidence of his cooperation, the trial court made its ruling because under Pennsylvania Rule of Evidence 801, the contents of a defendant's statement are inadmissible as hearsay when offered by the defense unless the defendant testifies. Defendant never testified at trial, so his statement (or even the fact that he gave a statement) could not otherwise come in under Rule 801.

As to the second line of inquiry, *i.e.*, investigation of the names of witnesses provided by Defendant, the trial court *did not prohibit* defense counsel from asking these questions of the detective because those questions would have been relevant to the thoroughness of his investigation. The trial court did, however, decide that—*if defense counsel did ask those questions*—it would open the door to the detective's answer as to why he did not investigate those witnesses. In a discussion side-bar with counsel, the Commonwealth represented that the

---

[1] On September 15, 2011, the Commonwealth filed a motion to introduce other acts evidence. In particular, the Commonwealth sought permission to introduce under Rule of Evidence 404(b) that Defendant was convicted of a gun-point robbery a few years earlier in the same neighborhood and in circumstances similar to those of the robbery of Coleman. After oral argument, the trial court denied the Commonwealth's motion.

detective did not investigate the defense witnesses because he knew Defendant had a prior gunpoint robbery conviction in the same neighborhood and believed he had already found the right person. The trial court believed that allowing the detective to testify to the prior gunpoint robbery conviction—assuming that was his answer—would be a fair response and also relevant to explaining why the detective did not investigate the defense witnesses. This is particularly true if defense counsel opened the door to that line of inquiry. Of course, the trial court would have provided an appropriate limiting instruction on how to use the testimony to avoid any unfair prejudice to Defendant. Ultimately, defense counsel decided against pursuing this line of questions after considering the trial court's ruling in advance of the detective's testimony.

As discussed above, the trial court's evidentiary rulings do not reflect manifest unreasonableness, partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. Therefore, the trial court did not abuse its discretion, and the evidentiary rulings were proper.[2]

4. The Police Officer's Testimony Was Proper

Defendant argues that the trial court erred by allowing Police Officer Allen to state his opinion that Defendant acted like a co-defendant and not like a victim. At trial, Officer Floyd Allen's testimony elicited the following exchange:

> **Q.** Can you describe this Defendant's demeanor as he's standing on the corner kind of like bobbing his head?
>
> **A.** He's bobbing his head and pointing and making a gesture that the other male had a gun, but he's very cool and very calm. And in my profession--

---

[2] Assuming *arguendo* the trial court's evidentiary ruling was improper, it would constitute harmless error given the overwhelming and uncontradicted evidence of Defendant's guilt. *See generally Commonwealth v. Petroll*, 738 A.2d 993, 1005 (Pa. 1999) ("Harmless error exists if the reviewing court is convinced from the record that (1) the error did not prejudice the defendant or the prejudice was de minimis, (2) the erroneously admitted evidence was merely cumulative of other untainted evidence, or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the guilty verdict.").

11

**MR. SCHULTZ**: Objection. It's not asking for opinion evidence here.

**THE COURT**: That's fine. It's denied.

**MS. GALIETTA**: You can continue.

A. In my years of service normally when people were getting robbed, they are excited when they see the police. They are jumping up and down. They are flagging us down: officer, officer, this man had a gun. He was not ex[c]ited or anything. So for investigation purposes, I placed him in my vehicle so I could stop the other male and find out what's going on.

N.T. 07/03/2013 at 45-46. Officer Allen also testified that Defendant was "very cool and very calm" so he placed him in his patrol vehicle. Although the Commonwealth asked Officer Allen why he had placed Defendant in his vehicle if Defendant was "acting like a victim," the trial court *sustained* Defendant's objection to the question. The trial court instructed the Commonwealth to rephrase the question. The Commonwealth then asked Officer Allen, "Why in this particular case did you place Defendant in the rear of your car for investigation purposes?" Defense counsel did not object to that question, and Officer Allen responded that he placed Defendant in the rear to "find out exactly what was going on." N.T. 07/03/2013 at 46-47.

Here, Officer Allen's testimony was offered to explain his state of mind as to why he placed Defendant in his vehicle for investigation purposes. Although Officer Allen testified as a lay witness, his testimony did not contravene the limits on opinion testimony under Pennsylvania Rule of Evidence 701. First, Officer Allen's opinion was rationally based on his perception because he personally observed Defendant's behaviors that night. Second, Officer Allen's statement was helpful to clearly understanding his testimony and his state of mind that night, *i.e.*, why he placed Defendant in his vehicle. Third, Officer Allen's statements and opinion were not based on any scientific, technical, or other specialized knowledge.

12

As an initial matter, Officer Allen never specifically testified that Defendant was "acting like a co-defendant" rather than a "victim;" indeed, the trial court sustained counsel's objection to that question. So, the specific claim of error regarding the detective's testimony is without merit. To the extent the trial court admitted evidence that may have allowed the Commonwealth to argue to the jury that Defendant acted like a co-defendant rather than a victim, that is a claim of error with the Commonwealth's statements during closing argument, not an evidentiary error. Last, the trial court's evidentiary ruling does not reflect manifest unreasonableness, partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. Therefore, Officer Allen's testimony was admissible as relevant and permissible lay opinion.[3]

5.    The Trial Court Properly Denied Defendant's Motions
Based Upon The Prosecutor's Comments During Closing Argument

Defendant asserts three claims of error based upon comments made by the prosecutor during closing argument that allegedly commented on Defendant's failure to testify: (1) he was denied a fair trial and due process of law; (2) the trial court improperly denied his motion for a mistrial; and (3) the trial court improperly denied his motion for extraordinary relief.

Here, during closing arguments, defense counsel argued that Defendant was actually robbed by the co-defendant Broadnax. N.T. 07/05/2013 at 31, 36. The Commonwealth attempted to refute this argument by claiming that "if [Defendant] was a victim, he would have been up there telling the story." Defense counsel objected to this comment, and following closing arguments, he moved for a mistrial on the grounds that the Commonwealth's comments infringed on Defendant's Fifth Amendment right to remain silent. The trial court denied the motion, stating that instructions regarding burden of proof and presumption of innocence would be sufficient to guide the jury. N.T. 07/05/2013 at 93, 101-02.

___

[3] Assuming *arguendo* the trial court's evidentiary ruling was improper, it would constitute harmless error given the overwhelming and uncontradicted evidence of Defendant's guilt. *See Petroll*, 738 A.2d at 1005.

13

For the reasons stated below, each of these claims of error must fail.

a.    Defendant Was Not Denied A Fair Trial Or Due Process Of Law
Resulting From The Prosecutor's Comments During Closing Argument

To constitute a Fourteenth Amendment due process violation, prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. *Commonwealth v. Cox*, 983 A.2d 666, 685 (Pa. 2009). Prosecutorial misconduct does not occur unless the prosecutor's challenged comments had the unavoidable effect of prejudicing the jury with such animus toward the defendant as to render it incapable of fairly weighing the evidence and arriving at a just verdict. *See Commonwealth v. Carson*, 913 A.2d 220, 236 (Pa. 2006). Especially relevant here, our Supreme Court has held that it is not prosecutorial misconduct when a prosecutor responds to arguments made by the defense during closing argument. *Id.*

Here, the Commonwealth fairly responded to defense counsel's argument that Defendant's head gesture to police signaled that he was "trying to tell the police officer, hey, that guy just robbed me[.]"N.T. 07/05/2013 at 36. Defense counsel also argued: "And for them to say that, well, there was nobody else out there and nobody else could have been out there robbing Wesley, that's impossible." N.T. 07/05/2013 at 31. The Commonwealth responded to this argument by stating that if Defendant "was a *victim*, he would have been up there telling the story." N.T. 07/05/2013 at 94. The prosecutor's comments do not reasonably lead to an inference that Defendant would have taken the stand if not guilty; rather they dispute whether he was a victim of a crime. *See Commonwealth v. Randall*, 758 A.2d 669, 681-682 (Pa. Super. Ct. 2000). Her comments were a fair response to Defendant's argument that he was allegedly the victim of a separate crime for which he was not on trial. N.T. 07/05/2013 at 31, 36. As such, there was no prosecutorial misconduct.

14

Additionally, the trial court gave the jury appropriate instructions regarding: (1) the constitutional protection that they can make no adverse inference based upon Defendant's failure to testify; and (2) it is the Commonwealth's burden to prove Defendant guilty. *See* discussion *infra* at section 5(b).These instructions cured any improper argument by the prosecutor. *Infra* at 16; *see Commonwealth v. Elliott*, 80 A.3d 415, 445 (Pa. 2013) (reiterating that jurors are presumed to follow the trial court's instructions). Thus, Defendant was not denied due process of law, and the trial court properly denied Defendant's motion for a mistrial.

b.      The Trial Court Properly Denied Defendant's Motion
For A Mistrial Due To The Prosecutor's Closing Argument

Defendant argues that the trial court improperly denied his motion for a mistrial based on the prosecutor's comments during closing argument. The decision to grant a mistrial is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. Ct. 2008). Granting a mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice. *Id.* Courts review claims of prosecutorial misconduct under an abuse of discretion standard. *Commonwealth v. Lopez*, 57 A.3d 74, 84 (Pa. Super. Ct. 2012).

Consideration of claims regarding remarks by prosecutors focuses on whether the defendant was deprived of a fair trial, not a perfect trial. *Commonwealth v. Solomon*, 25 A.3d 380, 383 (Pa. Super. Ct. 2011). A prosecutor's statements to the jury do not occur in a vacuum and must be viewed in context. *Id.* Not every inappropriate remark by a prosecutor constitutes reversible error. *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. Ct. 2005). While it is "axiomatic that a prosecutor may not comment adversely on a defendant's refusal to testify with respect to the charges against him," to constitute reversible error, any such comments "must call

15

the jury's attention to the fact that the defendant has not testified and must reasonably lead to an inference that he would have taken the stand if not guilty." *Randall*, 758 A.2d at 681-682 (citing *Commonwealth v. Sattazahn*, 631 A.2d 597, 611 (Pa. Super. Ct. 1993)).

Assuming *arguendo* the Commonwealth's comments were improper, they would only require the grant of a mistrial if they unavoidably prejudiced the jury *and* cautionary instructions were insufficient to overcome such prejudice. Here, the trial court instructed the jury that "it is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded under the constitution to remain silent. You must not draw any inference of guilt or any other inference adverse to the defendant from the fact that he did not testify." N.T. 07/05/2013 at 110-111.

Further, the trial court comprehensively instructed the jury about the Commonwealth's burdens:

> It is not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charges and that the defendant is guilty of those crimes beyond a reasonable doubt. A person accused of a crime is not required to present evidence or to prove anything in his own defense. If the evidence fails to meet the Commonwealth's burden, then your verdict must be not guilty. On the other hand, if the evidence does prove beyond a reasonable doubt that the defendant is guilty of the crimes charged, then your verdict should be guilty.
>
> [...]
>
> The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then the defendant is no longer presumed to be innocent and you should find him guilty. On the other hand if the Commonwealth has not met its burden, then you must find him not guilty. You must consider and weigh the testimony of each witness and give it such weight as in your judgment it is fairly entitled to receive.

16

N.T. 07/05/2013 at 107-109. Thus trial court's instructions were sufficient to cure alleged burden shifting by the Commonwealth. *See Commonwealth v. Elliott*, 80 A.3d 415, 445 (Pa. 2013) (reiterating that jurors are presumed to follow the trial court's instructions). Therefore, the trial court properly denied Defendant's motion for a mistrial.

c.     The Trial Court Properly Denied Defendant's Motion For
Extraordinary Relief Based Upon The Prosecutor's Closing Argument

Defendant argues that the trial court improperly denied his motion for extraordinary relief based on the prosecutor's comments during closing argument. Pennsylvania Rule of Criminal Procedure 704(B) provides that, "[u]nder extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." Pa.R.Crim.P. 704(B). Rule 704(B) is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential. *Commonwealth v. Grohowski*, 980 A.2d 113, 115-16 (Pa. Super. Ct. 2009). Appellate courts have repeatedly held that "we will not allow such motions as a 'substitute vehicle' for raising a matter that should be raised in a post-sentence motion." *Id.*

Here, the prosecutor did not commit such a manifest error that would justify granting Defendant's motion for extraordinary relief. As described above, the prosecutor's comments did not lead any jurors to draw any inferences adverse to Defendant, and the jury properly followed the trial court's instructions as to the Commonwealth's burden and Defendant's right to remain silent. Therefore, the trial court properly denied Defendant's motion for extraordinary relief.

6.     The Trial Court Properly Denied Defendant's Request For A
*Kloiber* Jury Instruction Regarding Identification Testimony

Defendant argues that the trial court erred by refusing to give the jury a specific instruction related to the accuracy of identification testimony based upon Pennsylvania Suggested Standard Criminal Jury Instruction 4.07B, "Identification Testimony--Accuracy In

17

Doubt." Defendant claimed several factors supported giving the *Kloiber* instruction, including: (1) Coleman's lack of sleep and statement to detectives that he was not sure if he was "mentally awake or alert," (2) the robbery occurred late at night, it was dark outside at the time of the robbery, and there were no street lights in the area of the robbery, (3) Coleman's opportunities to observe the person who robbed him occurred with his back to the person, looking over his shoulder for a few seconds, and with only a quarter-face view of the person, (4) Coleman was unable to give a clothing description of the person who robbed him, (5) Coleman could not accurately provide a description of the weapon, and (6) the robbery was surprising and an "exciting thing" that impaired his ability to observe. N.T. 07/05/2013 at 2-13. For the reasons stated below, Defendant's claim fails.

When reviewing a challenge to a jury instruction, the charge as a whole must be considered. There is no error in failing to give a specific charge when the trial court provides a full and complete charge. *Commonwealth v. Vincens-Rodriguez*, 911 A.2d 116, 120 (Pa. Super. Ct. 2006). An appellate court will reverse a trial court's instruction only when it abuses its discretion or commits an error of law. *Commonwealth v. Galvin*, 985 A.2d 783, 798-99 (Pa. 2009). When giving jury instructions, the trial court has broad discretion in phrasing the instructions so long as the instructions given "clearly, adequately, and accurately" reflect the law. *Commonwealth v. Lesko*, 15 A.3d 345, 397 (Pa. 2011).

Appellate courts examine the charge in its entirety to determine if it accurately and fairly sets forth the law to the jury. *Commonwealth v. Ogrod*, 839 A.2d 294, 331-32 (Pa. 2003). A trial court is not required to instruct the jury, verbatim, with all requested instructions, even if the substantive law within the proposed charge is without error. *Id.* The trial court is merely required to explain clearly and accurately the law to the jury; the trial court is not required to use the form requested by a party. *Id.* (citing *Commonwealth v. Jones*, 683 A.2d 1181, 1196 (Pa. 1996)).

18

Defendant's claim of error fails for several reasons. First, as discussed above, Coleman consistently identified Defendant without hesitation on the night of the robbery, at the preliminary hearing and at trial. Second, he never hedged on his identification, failed to identify Defendant, or made an incorrect identification prior to trial. Thus, Defendant's arguments relate only to the credibility and reliability of Coleman's testimony at trial, not that he was physically precluded from observing Defendant or made a prior misidentification. *Compare Commonwealth v. Collins*, 70 A.3d 1245, 1255 (Pa. Super. Ct. 2013) (a *Kloiber* instruction is appropriate only where a witness might be physically incapable of making a reliable observation as opposed to the typical credibility determinations made by a fact-finder such as a witness who is intoxicated); *Commonwealth v. Paolello*, 665 A.2d 439 (Pa. Super. Ct. 1995) (*Kloiber* instruction not required where the factors solely relate to the credibility of a witness, *i.e.*, a drunk witness, in a dark room, awakened from sleep, and confused) with *Commonwealth v. Bormack*, 827 A.2d 503 (Pa. Super. Ct. 2003) (*Kloiber* instruction is appropriate where an eyewitness equivocates, hedges, or fails to identify the defendant on a prior occasion, or where a witness is physically prevented or obstructed from making an identification).

Moreover, the trial court comprehensively instructed the jury on how to determine the credibility and reliability of testimony of a witness, which included instructions on conflicts in testimony, reliability of witness testimony, and mistaken recollections:

> You must consider and weigh the testimony of each witness and give it such weight as, in your judgment, it is fairly entitled to receive. The matter of the credibility of a witness, that is, whether their testimony is believable and accurate, in whole or in part, is solely for your determination. I will mention some of the factors which might bear on that determination. Whether the witness has any interest in the outcome of the case, or has friendship or animosity towards other persons concerned in the case; the behavior of the witness on the witness stand, and his or her demeanor manner of testifying. And whether they show any bias or prejudice that might color their testimony. The accuracy of his or

19

her memory and recollection and his or her ability and opportunity to acquire knowledge of or to observe the matters concerning that which they testified. The consistency or inconsistency of their testimony, as well as its reasonableness or unreasonableness in light of all of the evidence in the case.

[...]

If you find there are conflicts in the testimony, you, the jury, have the duty to decide which testimony to believe. But you should first try to reconcile, that is, fit together any conflicts in the testimony if you can fairly do so. Discrepancies in and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. Remember that two or more persons witnessing an incident may see or hear it happen differently.

Also, it is not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened. If you cannot reconcile a conflict in the testimony, it is up to you to decide which testimony, if any, to believe, and which to reject as not true or inaccurate. In making this decision, consider whether the conflict involves a matter of importance to your decision, or merely some unimportant detail. And you should consider whether the conflict is brought about by an innocent mistake or by an intentional falsehood. You should also keep in mind the other factors already discussed which go into deciding whether or not to believe a particular witness.

In deciding which of conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on either side. You should consider whether the witnesses appear to be biased or unbiased, whether they are interested or disinterested, and you should consider all other factors which go to the reliability of their testimony. The important thing is the quality of the testimony of each witness. You should also consider the extent to which conflicting testimony is supported by other evidence.

N.T. 07/05/2013 at 109-13.

The charge as a whole advised the jury that any testimony by a witness—including statements of identification—are not sacrosanct and that testimony should be given such weight as the jury believes is appropriate given the witness's "ability and opportunity to acquire knowledge of or to observe the matters concerning that which they testified," whether it is

20

qualified or weakened through cross-examination, and whether it was "corroborated or contradicted by any other evidence."

Thus, the failure to give the specific charge on identification testimony is without merit because Defendant was not entitled to a *Kloiber* charge based solely upon issues of credibility and the trial court properly instructed the jury on how to consider and weigh testimony from a witness.

CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

BY THE COURT:

_____
DANIEL J. ANDERS, JUDGE
Dated: August 25, 2014

21

Commonwealth v. Wesley Waters
CP-51-CR-0004959-2011
118 EDA 2013

## PROOF OF SERVICE

I hereby certify that I am this day caused to be served the foregoing this person(s), and in the manner indicated below:

Attorney for the Commonwealth:

Hugh Burns, Esquire
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Type of Service:        (   ) Personal  () Regular mail  (X) CJC mailbox (X) Email

Attorney for Defendant:

Joseph T. Schultz, Esq.
Two Penn Center, Suite 200
Philadelphia, PA 19102

Type of Service:        (   ) Personal  (X) Regular mail  () CJC mailbox (X) Email

Defendant:

Wesley Waters
DOB: 05/30/1988; Inmate #: HN3818,
PID/PP#: 0938798, SID: 26118913
SCI Smithfield
1120 Pike Street, P.O. Box 999
Huntingdon, PA 16652

Type of Service:        (   ) Personal  (X) Regular mail  () CJC mailbox

DATED: 8/25/2014

Bobby Ochoa, Esquire
Law Clerk to Hon. Daniel J. Anders